*Attorney Grievance Commission of Maryland v. John T. Hamilton, Jr.*, Misc. Docket AG No. 18 September Term, 2013 & Misc. Docket AG No. 3, September Term, 2014

**ATTORNEY GRIEVANCE – DISCIPLINE – DISBARMENT –** Court of Appeals disbarred attorney who failed to represent competently his clients, failed to appear in court at scheduled proceeding without timely or adequate explanation, failed to file discovery (resulting in sanctions imposed on his clients), failed to communicate with his clients, failed to deposit funds into an attorney trust account, charged an unreasonable fee, failed to return unearned fees, misrepresented that he filed paperwork in a case, and misappropriated funds. Respondent failed also to respond to lawful inquiries from Bar Counsel for information concerning client complaints. Such misconduct violated Maryland Lawyers' Rules of Professional Conduct 1.1, 1.2(a), 1.3, 1.4(a) and (b), 1.5(a), 1.15(a) and (c), 1.16(d), 8.1, and 8.4(a), (c), and (d). Respondent violated also Maryland Rule 16-604 and Maryland Code, Bus. Occ. & Prof. Art., § 10-306. Disbarment is the appropriate sanction.

Circuit Court for Anne Arundel County
Case Nos. 02-C-13-17899 & 02-C-13-186636
Argued: 12 May 2015

IN THE COURT OF APPEALS OF
MARYLAND

Misc. Docket AG No. 18

September Term, 2013
&
Misc. Docket AG No. 3

September Term, 2014

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

JOHN T. HAMILTON, JR.

Barbera, C.J.,
*Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

Opinion by Harrell, J.

Filed:  July 27, 2015

*Harrell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

John T. Hamilton, Jr. ("Respondent") was admitted to the Bar of this Court on 11 December 2001. He maintained an office for the practice of law in Anne Arundel County at all times relevant to this opinion.

The Attorney Grievance Commission of Maryland ("Petitioner") asked us to disbar Hamilton for violating certain of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"), Maryland Rule 16-604, and Maryland Code, Bus. Occ. & Prof. Art., § 10-306. On 4 June 2013, Petitioner, acting through Bar Counsel, filed against Hamilton a Petition for Disciplinary of Remedial Action ("PDRA"), in response to its investigation of the complaints of two of Respondent's former clients, Bryan Manning and Richard DeVincent. On 19 March 2014, we designated the Honorable Paul F. Harris, Jr. of the Circuit Court for Anne Arundel County to hear this case.

On 28 March 2014, Petitioner filed a second PDRA against Respondent for alleged violations of the MLRPC, Md. Rule 16-604, and Md. Code, Bus. Occ. & Prof. Art., § 10-306, based on its investigation of a complaint by Windy Grauer, another of Respondent's former clients. We consolidated for hearing the two petitions.

Petitioner charged Respondent with violating MLRPC 1.1 (Competence),[1] 1.3 (Diligence),[2] 1.4(a) and (b) (Communication),[3] 1.15(c) (Safekeeping Property),[4] 1.16(d)

---

[1]     MLRPC 1.1 provides:

> A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

(Declining or Terminating Representation),[5] 8.1(b) (Bar Admission and Disciplinary Matters),[6] and 8.4(a) and (d) (Misconduct)[7] during Petitioner's investigation of

---

(…continued)

[2]     MLRPC 1.3 provides:

> A lawyer shall act with reasonable diligence and promptness in representing a client.

[3]     MLRPC 1.4 provides:

> (a) A lawyer shall:
>
> > (1) Promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined by Rule 1.0(f), is required by these Rules;
> > (2) Keep the client reasonably informed about the status of the matter;
> > (3) Promptly comply with reasonable requests for information; and
> > (4) Consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
>
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[4]     MLRPC 1.15(c) provides:
> Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

[5]     MLRPC 1.16(d) provides:

(Continued…)

2

Manning's complaint. Respondent was charged with violating MLRPC 1.1, 1.3, 1.4(a)

(…continued)

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

MLRPC 8.1(b) provides:

> An application for admission or reinstatement to the bar, or a lawyer in connection with a bar admissions application or in connection with a disciplinary matter, shall not:
>
> ****
>
> (b) Fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in that matter, or knowingly fail to respond to a lawful demand for information from an admission or disciplinary authority, expect that this rule does not require disclosure of information protected by Rule 1.6.

MLRPC 8.4(a) and (d) provide:

> It is professional misconduct for a lawyer to:
>
> (a) Violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the actions of another;
>
> ****
>
> (d) Engage in conduct that is prejudicial to the administration of justice.

and (b), 1.15, and 8.4(a) and (d) while representing Richard DeVincent. Respondent was charged with violating MLRPC 1.1, 1.2(a) (Scope of Representation and Allocation of Authority Between Client and Lawyer),[8] 1.3, 1.4(a) and (b), 1.5(a) (Fees),[9] 1.15(a)[10] and

---

[8]   MLRPC 1.2(a) provides:

> [A] lawyer shall abide by a client's decision concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter.

[9]   MLRPC 1.5(a) provides:

> (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly;
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
> (3) The fee customarily charged in the locality for similar legal services;
> (4) The amount involved and the results obtained;
> (5) The time limitations imposed by the client or by the circumstances;
> (6) The nature and length of the professional relationships with the client;
> (7) The experiences, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) Whether the fee is fixed or contingent.

[10]   MLRPC 1.15(a) provides:

(Continued…)

(c), 1.16(d), 8.1(b) and 8.4(a), (b), (c)[11], and (d), in addition to Maryland Rule 16-604[12] and Maryland Code (2000, 2010 Repl. Vol.), Business Occupations & Professions Article, § 10-306 ("BOP")[13] in connection with the complaint of Windy Grauer.

---

(…continued)

> (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of Maryland rules, and records shall be created and maintained in accordance with the rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account and of the other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

[11]     MLRPC 8.4(b) and (c) provides:

> It is professional misconduct for a lawyer to:
>
> (b) Commit a criminal act that reflects adversely on the a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
> (c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

[12]     Md. Rule 16-604 provides:

> Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part of a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an

(Continued…)

5

Judge Harris set a hearing for 7-8 July 2014. Respondent requested a continuance because of his hospitalization. After receiving an acceptable confirmatory fax from Dr. Kevin Ferentz, Judge Harris rescheduled the hearing for 4-5 August 2014. On 4 August 2014, Respondent requested another continuance. Respondent provided another letter from Dr. Ferentz, dated 24 July 2014. This letter did not explain, however, why Respondent would be unavailable for the August hearing dates. Judge Harris denied the continuance and heard the case. Respondent did not appear.

Neither party filed exceptions to Judge Harris's written factual findings and legal conclusions. Respondent failed also to offer any recommendation contrary to Petitioner's written recommendation for disbarment or avail himself of the opportunity to appear and argue the proposed sanction before us.

Finding Judge Harris's findings not clearly erroneous and virtually all of his conclusions of law were supported by clear and convincing evidence, we disbarred Respondent in a per curiam order issued 13 May 2015. *Attorney Grievance Comm'n v. Hamilton*, 442 Md. 740, 114 A.3d 708 (mem.). In this opinion, we explain that decision.

---

(…continued)

> approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or a third person and is transmitted directly to the client or third person.

[13]     BOP § 10-306 provides:

> A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

I. Background

## A. The Hearing Judge's Findings of Fact

Judge Harris accepted fully as his own Petitioner's proposed "Factual findings and Conclusions of Law". We parse here the hearing judge's findings of fact according to each client/complainant.

### 1. *Complaint of Bryan Manning*

Bryan Manning retained Respondent on 21 January 2010 to represent him in his divorce case. Respondent entered his appearance on Manning's behalf in the case in the Circuit Court for Howard County, and filed an answer to the spouse's complaint and a counter-complaint.

Manning paid Respondent for the representation a "flat" fee of $10,000, in two installments of $5,000.00. Respondent failed to place Manning's payments into an attorney trust account. Despite Manning's requests for one, Respondent failed to provide a written retainer agreement.

On 4 March 2010, Manning's wife's attorney served upon Hamilton requests for discovery from his client. Manning provided promptly to Respondent responses to these discovery requests. Although Respondent was in possession of the responses, Manning's wife was compelled to file a motion to compel production of the items requested, claiming no responses had been received by her. On 16 April 2010, the trial court granted the motion to compel discovery and ordered Manning to provide, within 15 days, complete answers to the interrogatories and a response to the request for the production of documents. At about the same time, Respondent requested $500.00 more from

7

Manning, ostensibly to obtain an extension of time to avoid missing a deadline. Manning gave Respondent a check for $500.00.

In early May, Respondent told Manning he needed Manning's responses to the interrogatories on 5 May 2010, so he could file them the next morning. Respondent demanded another $500.00 to submit the answers to interrogatories, which amount Manning paid in cash. Respondent failed to place either $500.00 payment into an attorney trust account.

As of July 2010, Respondent still had not submitted the answers to interrogatories or responded to the document production request. On 7 July 2010, the trial court granted Manning's wife's motion for sanctions. In the order granting sanctions, the court directed that, if Manning failed to provide full answers to the discovery requests by 8 September 2010, he would be prohibited from introducing contrary evidence at trial relative to the topics of the discovery requests. Despite the motion to compel and the sanctions imposed by the Court, Respondent never filed his client's discovery responses, which information was (or should have been) in his possession.

At trial, the Circuit Court granted Manning's wife's request for a divorce. The Court made also a marital award to Manning's ex-wife and awarded her attorney's fees in excess of $4,000.00 for Manning's failure to answer discovery. Manning learned, at trial and for the first time, that he had been sanctioned for failure to provide discovery responses.

Following Manning's divorce, Respondent refused to assist Manning with issues relating to the division of martial property. Respondent failed to inform Manning about

court hearings and deadlines in his case. Finally, Respondent would not produce a copy of Manning's file upon request, despite Manning offering to pay for the copying.

Respondent failed to answer Bar Counsel's letter request for information regarding his representation of Manning and the client's complaint. Respondent failed to produce any response to Manning's complaint at trial or at any other time.

2. *Complaint of Richard DeVincent*

DeVincent hired[14] Respondent in January 2010 to reopen his child custody case in order to seek full custody of his children. Respondent charged DeVincent a "flat" fee of $7500.00, which DeVincent paid in installments. Respondent did not deposit any of the funds into an attorney trust account because Respondent did not have an attorney trust account during the time he represented DeVincent.

In July 2010, DeVincent's wife served discovery requests on Hamilton. DeVincent provided his responses to Respondent approximately one week after service. Respondent confirmed that he received DeVincent's responses. The deadline for timely completion of discovery was 30 September 2010. Respondent failed to file the discovery responses provided to him by DeVincent. In November 2010, Respondent informed DeVincent they needed to meet to prepare answers to the discovery requests. In January 2011, Respondent told DeVincent he did not have the discovery responses DeVincent had provided in July 2010. DeVincent's fiancée located copies of DeVincent's earlier responses and forwarded them to Respondent via email.

---

[14]    It is not clear from the record if Respondent had an executed written retainer agreement with DeVincent.

On 8 February 2011, the court sanctioned DeVincent $250.00 for failure to respond to the discovery requests. The court required also that the answers be filed in 10 days or DeVincent's complaint would be stricken. On 10 February 2011, a family law master[15] of the Circuit Court advised Respondent that he risked losing the case for his client based on his failure to respond to discovery. Respondent filed the discovery responses on 18 February 2011.

Respondent was often unresponsive to DeVincent's inquires during the representation. Respondent failed, on numerous occasions, to return DeVincent's telephone calls or text messages requesting to meet to discuss the case. Respondent did not meet with DeVincent to discuss the case until just before a November 2010 court hearing. DeVincent requested also that Respondent subpoena certain fact witnesses for trial, which persons Respondent did not subpoena. Throughout his representation of DeVincent, Respondent failed to provide DeVincent with copies of court orders,

---

[15]     Maryland Rule 9-208, at the time, stated:

(a) Referral

> (1)*As of course* If a court has a full time or part-time standing master for domestic relation issues and a hearing has been requested or is required by law, the following matters arising under this Chapter shall be referred to a master as of course unless the court directs otherwise in a specific case
> ****
>  (f) subject to rule 9-205, pedente lite custody of or visitation with children or modification of an existing order or judgment as to custody or visitation

Family law masters are referred to currently as magistrates.

pleadings, or correspondence relevant to the case so as to keep him informed of the status of the case.

On 2 March 2011, Respondent met with DeVincent and advised him to settle the case. DeVincent agreed because he believed Respondent was not prepared for trial on the merits.

### 3.  *Complaint of Windy Grauer*

Windy Grauer retained Respondent in January 2010 to represent her in an ongoing child custody dispute.[16] Grauer paid Respondent $5,000. Respondent failed to deposit any of the $5,000 into an attorney account.

During the course of the representation, Grauer asked Respondent for copies of correspondence and other papers that had been filed in her case. Respondent did not provide them.

Respondent did little or no work on Grauer's behalf, despite her requests that Respondent proceed with her case. Respondent misrepresented to Grauer that he had filed pleadings and papers on her behalf in the Circuit Court for Cecil County when, in fact, he had not. Respondent failed inexplicably to appear for at least two hearings in Grauer's case, which caused either cancellations or postponements.

In the face of this, Grauer terminated Respondent's representation. Respondent failed to take reasonable steps to protect her interests after termination. Respondent did not provide initially his file on Grauer's case to her substitute attorney, despite repeated

---

[16]     The record makes no mention of a written retainer agreement.

11

requests. When Respondent provided the file two months later, it was incomplete. Respondent failed to refund any of the $5,000 fee.

After Grauer filed her complaint with Bar Counsel, Respondent was sent four letters by Bar Counsel with directions to respond. Moreover, Respondent spoke to an Assistant Bar Counsel on the telephone regarding the requested response. Yet, he never responded to Bar Counsel regarding Grauer's complaint.

## B. The Hearing Judge's Conclusions of Law

The hearing judge concluded collectively (by clear and convincing evidence) that Respondent violated MLRPC 1.1, 1.2(a) 1.3, 1.4(a) and (b), 1.5(a),  1.15(a) and (c), 1.16(d), 8.1(b) and 8.4(a), (b), (c) and (d), Md. Rule 16-604 and Maryland Code (2000, 2010 Repl. Vol.), BOP § 10-306. In regard to his representation of Manning, Respondent violated MLRPC 1.1, 1.3, 1.4(a) and (b), 1.15(c), 1.16(d), 8.1(b), 8.4(a) and (d). In regard to his representation of DeVincent, Respondent violated MLRPC 1.1, 1.3, 1.4(a) and (b), 1.15(c), 8.4(a) and (d). In regard to his representation of Grauer, Respondent violated MLRPC 1.1, 1.2(a), 1.3, 1.4(a) and (b), 1.5(a), 1.15(a) and (c), 1.16(a) and (d), 8.1(b), and 8.4(a), (b), (c), and (d), in addition to Md. Rule 16-604 and BOP § 10-306.

## II. Analysis

## A.  Jurisdiction and Standard of Review

"The Court of Appeals has original and complete jurisdiction over attorney discipline proceedings." *Attorney Grievance Comm'n v. Harmon*, 433 Md. 612, 623, 72 A.3d 555, 562 (2013) (internal quotations omitted) (citation omitted). "We generally will accept the hearing judge's findings of fact, unless those findings are clearly erroneous."

12

*Harmon*, 433 Md. at 623, 72 A.3d at 562 (quoting *Attorney Grievance Comm'n v. Tanko*, 408 Md. 404, 418, 969 A.2d 1010, 1019 (2009) (internal quotations omitted)). The hearing judge's conclusions of law do not receive the same deference as his or her fact findings. "We review the hearing judge's legal conclusion without deference, pursuant to Md. Rule 16-759(b)(1)." *Harmon*, 433 Md. at 623, 72 A.3d at 562 (citing *Attorney Grievance Comm'n v. Penn*, 431 Md. 320, 334, 65 A.3d 125, 133-34 (2013)).

## B. The Hearing Judge's Factual Findings

Based on our review of the record, we conclude that the hearing judge's findings of fact were not clearly erroneous. Further, when no exceptions to the hearing judge are filed, as was the case here, we may (and do here) treat the hearing judge's findings of fact as established for purposes of our independent review of the judge's conclusions of law. Maryland Rule 16-759(b)(2)(A).[17]

## C. The Hearing Judge's Legal Conclusions

For the reasons that follow, we agree with the hearing judge's collective conclusions that Respondent violated MLRPC 1.1, 1.2(a) 1.3, 1.4(a) and (b), 1.5(a), 1.15(a) and (c), 1.16(d), 8.1(b), 8.4(a), (c), and (d), Md. Rule 16-604, and BOP § 10-306. We are not convinced, however, that the evidence demonstrated adequately that Respondent violated MLRPC 8.4(b).

---

[17]     Md. Rule 16-759(b)(2)(A) provides:

> "If No Exceptions Are Filed: If no exceptions are filed, the Court may treat the findings of facts as established for the purpose of determining appropriate sanctions, if any."

13

*1. MLRPC 1.1*

MLRPC 1.1 requires that a lawyer "provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." An attorney may violate MLRPC 1.1, although he or she has the adequate knowledge or skill to represent a client, if the attorney fails to apply the thoroughness and/or preparation necessary for proper representation. *Attorney Grievance Comm'n v. De La Paz*, 418 Md. 534, 553, 16 A.3d 181, 192 (2012); *see Attorney Grievance Comm'n v. Costanzo*, 432 Md. 233, 253, 68 A.3d 808, 819 (2013) ("A failure to make the proper and required filings in a client matter demonstrates a lack of the appropriate preparation and thoroughness necessary to provide competent representation.") (citation omitted) (internal quotations omitted); *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 54, 891 A.2d 1085, 1097 (2006) ("Evidence of a failure to apply the requisite thoroughness and/or preparation in representing a client is sufficient alone to support a violation of Rule 1.1."). Failure to subpoena witnesses that may help one's client is also indicative of incompetent representation and a violation of MLRPC 1.1. *See Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 93, 753 A.2d 17, 37 (2000) ("Respondent's failure, without sufficient explanation, to subpoena witnesses . . . which were specifically brought to respondent's attention by his client is a violation of [MLRPC] 1.1.").

Failure to appear in court when expected to do so is a particularly egregious violation of MLRPC 1.1. "[A]n attorney's failure to appear in court for a client's trial, absent an acceptable explanation, [is] incompetent representation and a violation of

14

MLRPC 1.1." *Attorney Grievance Comm'n v. Harris*, 366 Md. 376, 403, 784 A.2d 516, 531 (2001) (citing *Mooney*, 359 Md. at 74, 753 A.2d at 26). Competent representation "necessarily includes, at a minimum, the attorney's presence at any court proceedings for which he or she was retained." *Harris*¸ 366 Md. at 403, 784 A.2d at 531 (citing *Mooney*, 359 Md. at 74, 753 A.2d at 26). The failure of an attorney to appear in court is a complete failure of representation and "the ultimate incompetency." *Harris,* 366 Md. at 403, 784 A.2d at 531 (quoting *Mooney*, 359 Md. at 74, 753 A.2d at 25) (internal quotations omitted).

a. Respondent's representation of Manning

Respondent's failure to respond to discovery, although he was in possession of Manning's responses for more than four months and in spite of the trial judge's order that Respondent provide them, is far below the standard of competent representation this Court (and the public) expects of attorneys. The resulting civil sanctions against, and pecuniary damage to, Manning are the sole fault of Respondent. Respondent's lack of preparation, resulting in the Court ordering his client to pay "over" $4,000 of the other party's attorney fees, is another indication of Respondent's incompetent representation.

b. Respondent's representation of DeVincent

Respondent failed to file discovery responses despite having them in his possession for a period of approximately six months. Respondent's failure to file discovery responses resulted in sanctions against DeVincent. Respondent failed also to subpoena fact witnesses, whose names were supplied by DeVincent.

15

DeVincent was unable to present his case because of Respondent's lack of diligent action. DeVincent was so insecure in Respondent's preparation that he felt compelled to accept Hamilton's recommendation that he settle the case, rather than attempt to present evidence and argument for consideration by the trial court. Respondent's representation of DeVincent was far below the minimum level of competency required from attorneys.

c. Respondent's representation of Grauer

Respondent failed to file pleadings and papers on behalf of Grauer. He was unable to provide Grauer and her substitute attorney with the papers necessary for continuation of her representation. Respondent performed little to no services on behalf of Grauer.

Although Respondent violated MLRPC 1.1 multiple times, the most egregious violation was his failure to appear in court on at least two occasions on behalf of Grauer, without acceptable explanation.[18]

2. *MLRPC 1.2(a)*

MLRPC 1.2(a) provides that:

> [A] lawyer shall abide by a client's decision concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the

---

[18]    Because Grauer had co-counsel, the trial continued despite Respondent's absence. One may be tempted to assume that, because the trial continued, Respondent's failure to appear may not have had any negative effect on the trial proceedings and did not affect adversely Grauer. We have not found merit, however, in such an "all is well that ends well" assertion sometimes made in these situations, although, as we noted, Hamilton filed no exceptions and made no arguments to us. *See Attorney Grievance Comm'n v. Zdravkovich*, 362 Md. 1, 25, 762 A.2d 950, 96 (2000) (holding that just because a matter ended positively for a client does not mean the negligent actions of the attorney are immaterial).

client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter.

An attorney violates MLRPC 1.2(a) if he or she fails to inform a client of the status of his or her case, thereby denying the client the ability to make informed decisions.

In order for a lawyer to abide by a client's decisions concerning representation, the client must be able to make informed decisions as to the objectives of the representation. In order for a client to make informed decisions, an attorney must give the client honest updates regarding the status of his or her case.

*Attorney Grievance Comm'n v. Shapiro*, 441 Md. 367, 380, 108 A.3d 394, 402 (2015).

An attorney may violate MLRPC 1.2(a) also if he or she fails to follow the instructions of the client. *Attorney Grievance Comm'n v. Sperling*, 432 Md. 471, 493, 69 A.3d 478, 490-91 (2013) (quoting *Attorney Grievance Comm'n v. Reinhardt*, 391 Md. 209, 220, 222, 892 A.2d, 533, 539-40 (2006) (internal quotations omitted)).

Hamilton's actions in this case, it seems to us, are similar to those of the respondent in *Attorney Grievance Comm'n v. Reinhardt*, 391 Md. 209, 892 A.2d 533. In *Reinhardt*, the attorney under inquiry lost his client's file, and "[took] no action on [his client's] behalf despite her numerous requests regarding status." *Reinhardt*, 391 Md. at 218, 892 A.2d at 538. We found those actions to constitute a violation of MLRPC 1.2(a). *See Reinhardt*, 391 Md. at 218, 892 A.2d at 538*; see also Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 319-20, 44 A.3d 344, 357 (holding that neglect of client affairs is a violation of MLRPC 1.2(a)).

17

a. Respondent's Representation of Grauer

Respondent failed to provide Grauer with information and papers she requested. Respondent failed to follow Grauer's instructions with regard to those papers she wanted filed. Respondent lost part of Grauer's client file, and failed generally to take action on her behalf, despite her requests and stated objectives of the representation. From these instances, Respondent violated MLRPC 1.2(a) multiple times during his representation of Grauer.

*3. MLRPC 1.3*

MLRPC 1.3 states: "[a] lawyer shall act with reasonable diligence and promptness in representing a client." "[A] lawyer who causes discovery sanctions to be imposed against his/her client due to his/her failure to respond to discovery requests violates MLRPC 1.3, even if the sanction is lifted later." *Brown*, 426 Md. at 320, 44 A.3d at 357-58 (citing *Attorney Grievance Comm'n v. Culver*, 381 Md. 241, 276, 849 A.2d 423, 444 (2004)). An attorney violates MLRPC 1.3 also by doing "nothing whatsoever to advance the client's cause or endeavor." *Attorney Grievance Comm'n v. Bahgat*, 411 Md. 568, 575, 984 A.2d 225, 229 (2009). A lack of preparation or thoroughness that would violate MLRPC 1.1 is evidence also of a violation of MLRPC 1.3. *See Attorney Grievance Comm'n v. McCulloch*, 404 Md. 388, 398, 946 A.2d 1009, 1015 (2008); *Mooney*, 359 Md. at 94, 753 A.2d at 37 (holding that respondent violated MLRPC 1.3 for the same reasons he violated MLRPC 1.1; the same rationale could be used for both violations).

a. Respondent's Representation of Manning

Respondent received Manning's responses to discovery before the court compelled responses and before the court ordered sanctions. Respondent had the ability to provide the court with Manning's responses to discovery and avoid sanctions, but failed to do so. Further, Respondent ignored the deadline imposed by the order compelling responses and the later deadline the court imposed before ordering sanctions. In the end, Respondent declined to file discovery despite having his client's responses for approximately six months. That sanctions were imposed on Manning indicates also that Respondent did not act with the reasonable promptness required by MLRPC 1.3.

b. Respondent's Representation of DeVincent

Respondent's failure as well to submit timely discovery responses on behalf of DeVincent resulted in sanctions. Respondent's failure to subpoena the witnesses requested by DeVincent, which we concluded earlier violated MLRPC 1.1, is also an indication of Respondent's failure to act with the diligence expected of attorneys. Respondent was so unprepared to present DeVincent's case that DeVincent felt he had to settle the matter.

c. Respondent's Representation of Grauer

Respondent performed virtually no work in Grauer's case. The same actions that we found to be a violation of MLRPC 1.1 constitute a violation of MLRPC 1.3. Respondent's lack of competent representation amounts to a lack of the diligence required by MLRPC 1.3.

*4. MLRPC 1.4 (a) and (b)*

MLRPC 1.4 requires attorneys to communicate with their clients and keep them informed reasonably of the status of their legal matters. Subsections (a) and (b) of the rule state:

> (a) A lawyer shall:
> (1) Promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f) is required by these Rules;
> (2) Keep the client reasonably informed about the status of the matter;
> (3) Promptly comply with reasonable requests for information; and
> (4) Consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

We have found violations of MLRPC 1.4 when a client tries repeatedly to contact the attorney, but the attorney fails to respond. *See Attorney Grievance Comm'n v. Kwarteng*, 411 Md. 652, 658, 660, 984 A.2d 865, 868-70 (2009); *Attorney Grievance Comm'n v. Tinsky*, 377 Md. 646, 651, 835 A.2d 542, 545 (2003) (holding that failure to respond to a client's inquiries regarding his or her case is a violation of MLRPC 1.4). It is a violation of MLRPC 1.4 also when an attorney fails to communicate crucial information about the status of the case. *De La Paz*, 418 Md. at 554, 16 A.3d at 193 (2009) (holding that an attorney violated MLRPC 1.4 when his client was unaware that his case had been dismissed until notified by the court). We have found that attorneys violate MLRPC 1.4

20

when they fail to comply promptly with a client's reasonable requests for information. These requests can be in reference to a status update or for documents and other materials pertaining to their case. *See Attorney Grievance Comm'n v. Lee*, 393 Md. 385, 407-08, 903 A.2d 360, 374 (2006).

a. Respondent's representation of Manning

Respondent's most obvious violation of the Rule while representing Manning occurred when he failed to inform Manning of the sanctions arising from Respondent's failure to respond to discovery requests. Manning only discovered at trial that he had been sanctioned for his attorney's neglect. This violates clearly MLRPC 1.4 as Respondent failed to communicate promptly important case information. Respondent ignored Manning's reasonable requests to inform him of trial dates and was unable to provide Manning with copies of his client file, despite Manning's requests and offer to pay for copies. As a result of the lack of communication, Respondent failed to keep his client informed reasonably about the status of his case.

b. Respondent's Representation of DeVincent

Respondent failed to: (a) respond to DeVincent's telephone calls and text messages; (b) meet with DeVincent; or, (c) provide DeVincent with copies of requested papers. DeVincent was unaware of Respondent's preparation (if any) of the case and, as a result, felt compelled to settle his case. Respondent did not take adequate steps to keep DeVincent informed reasonably so that he could make decisions regarding the course and direction of the representation.

21

c. Respondent's Representation of Grauer

Respondent failed to respond to Grauer's requests for copies of certain papers and filings in her case. Respondent failed to inform Grauer of what was happening in her case, despite her requests, which failure hampered her ability to make informed decisions and choices. When Respondent did respond to Grauer, the content of his responses was not informative or accurate, e.g., telling her that he had submitted papers on her behalf when he had not. Respondent was unable or unwilling also to provide Grauer and her substitute counsel a complete copy of her case file after she terminated Hamilton. He provided an incomplete copy two months after her request, thereby limiting Grauer's ability to make informed decisions regarding her case.

5. *MLRPC 1.5(a)*

MLRPC 1.5(a) requires lawyers to charge only reasonable fees. The rule provides:

> (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationships with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

22

(8) whether the fee is fixed or contingent.

Even if a fee is reasonable on its face at the outset of representation, if the attorney fails thereafter to perform to any meaningful degree the legal services for which the fee was set initially, the fee becomes unreasonable with the benefit of hindsight. *See Guida*, 391 Md. at 52-53, 891 A.2d at 1096-97 ("[A]lthough [the] fee . . . may not be unreasonable on its face, in the context of Guida's failure to perform the services to any meaningful degree . . . the fee became unreasonable."); *Attorney Grievance Comm'n v. Monfried*, 368 Md. 373, 392-94, 794 A.2d 92, 103-04 (2002) (holding that a fee that is reasonable facially may be unreasonable if the court finds that little or no work was done).

a. <u>Respondent's representation of Grauer</u>

Respondent's $5,000 fee paid by Grauer is unreasonable because he failed to perform any meaningful legal services for her. Respondent failed to produce or file documents and motions requested by Grauer, failed to subpoena witnesses, failed to prepare witnesses, and failed to make copies of motions and/or exhibits for Grauer's substitute attorney. In short, Respondent did little or nothing for which $5,000 would be a reasonable fee.

6. *MLRPC 1.15(a) and (c); Md. Rule 16-604*

MLRPC 1.15(a) and (c), require attorneys to take certain actions regarding client trust money. MLRPC 1.15(a) and (c) provide:

> (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of Maryland rules, and record shall

be created and maintained in accordance with the rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account and of the other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

**\*\*\*\***

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

MLRPC 1.15(a) requires attorneys to keep the property of clients separate from the lawyer's own property. When the property is money, it must be held in a separate account pursuant to Title 16, Chapter 600 of the Maryland Rules.[19] *See Attorney Grievance Comm'n v. Stillwell*, 434 Md. 248, 257, 74 A.3d 728, 733 (2013).

Trust money is money an attorney receives from a client in anticipation of performing future services. *See Attorney Grievance Comm'n v. Blum*, 373 Md. 275, 298, 818 A.2d 219, 233 (2003) ("The funds were given to [Respondent] in anticipation of

---

[19] Title 16, Chapter 600 of the Maryland Rules governs trust accounts held by attorneys. Maryland Rule 16-601. Md. Rule 16-603 imposes a duty on attorneys to maintain a trust account. Md. Rule 16-604 requires deposits of certain funds into the account. Md. Rule 16-605 requires the attorney to request the financial institution to designate on its records that the account is an attorney trust account and to authorize the financial institution to report to Bar Counsel dishonored instruments or overdrafts on the account. Md. Rule 16-605 places requirements on the name and designation of the account. Md. Rule 16-606.1 requires the attorney to keep certain records regarding the account. Md. Rule 16-607 prohibits the attorney from depositing non-trust funds into the account and from failing to withdraw earned fees from the account. Md. Rule 16-608 governs interest earned on attorney trust accounts.

future services, and as such, qualified as 'trust money' . . . .") (citing *Attorney Grievance Comm'n v. McLaughlin*, 372 Md. 467, 504, 813 A.2d 1145, 1167 (2002)). In the present case, all funds paid to Respondent were trust funds. Each fee was paid in advance of future services and because "[t]he full flat fee is not earned until all the work associated with the fee is completed,"[20] *Attorney Grievance Comm'n v. Zuckerman*, 386 Md. 341, 360, 872 A.2d 693, 704 (2005) (citations omitted) (international quotations omitted), at the time Respondent received the funds, he had not earned them.[21, 22] Md. Rule 16-604 requires an attorney to deposit all funds of this nature into an attorney trust account.[23] An attorney violates MLRPC 1.15(c) when he or she does not deposit trust funds into an

---

[20]    Whether labeled a retainer fee or "flat" fee matters not in these cases because the exception noted in Md. Rule 16-604 (*see infra* note 23) is not implicated by the facts here.

[21]    The timeline makes it clear that Respondent received funds from his clients before he began work on their cases, so, at the time Respondent received the funds, he had not performed any work to earn them.

[22]    It is irrelevant to our analysis of the MLRPC 1.15(a) charges whether Respondent earned the fees he charged Manning and DeVincent, *see Attorney Grievance Commission v. Ugwuonye*, 405 Md. 351, 371, 952 A.2d 226, 237-38 (2008) (holding that even if a fee was eventually earned such does not excuse an initial failure to deposit the fees into attorney trust account when they were received and unearned), as opposed to Grauer's case where the fee was never earned.

[23]    Under Md. Rule 16-604, the only funds that do not have to be deposited into a trust account are those "received as fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client . . . ." None of the funds discussed in the present case fall into the excepted category; therefore, all the payments needed to be paid into a trust account.

attorney trust account and does not obtain the client's informed consent to do otherwise.[24] *Stillwell*, 434 Md. at 257, 74 A.3d at 733 ("Without informed consent, confirmed in writing, having been given by the client, that same conduct [that violates MLRPC 1.15(a)] violates MLRPC 1.15(c).").

a. Respondent's representation of Manning

Respondent failed to keep the fee paid by Manning in an attorney trust account and did not obtain his client's informed consent to treat the money as his own property.[25]

b. Respondent's representation of DeVincent

Respondent failed to place the fee paid by DeVincent in an attorney trust account and did not obtain his client's informed consent to hold the money in an account other than an attorney trust account. *Supra* note 24, at 26; note 25, at 27.

c. Respondent's representation of Grauer

Respondent failed to deposit Grauer's fee into an attorney trust account and did not obtain his client's informed consent to do otherwise.

---

[24] The language of MLRPC 1.15(c) permits advances against unearned fees to be treated as the property of either the lawyer or the client. The Rule's default position is that, unless the client gives informed consent, the money is to be treated as the property of the client. Comment to 1.15(c).

[25] The record does not indicate that Respondent informed his clients of the ability to hold money in an attorney trust account and there is no mention regarding consent as to where the money was held. Because the default provision under the Rule provides that trust money must be held in an attorney trust account, absent evidence of informed consent a violation occurred. *See supra* note 23, at 26.

*7. MLRPC 1.16(d)*

MLRPC 1.16(d) requires attorneys to protect their client's interests after the representation ends. The Rule states:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

Failure to return unearned fees and papers violates MLRPC 1.16. *See Attorney Grievance Comm'n v. Park*, 427 Md. 180, 189-90, 46 A.3d 1153, 1158 (2012) (holding that failure to return a portion of an unearned fee and papers that clients were entitled to constituted a violation of MLRPC 1.16(d))*; Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 333, 68 A.3d 862, 867 (2013) (holding that Respondent violated MLRPC 1.16(d) when he "did not return, in a timely manner, the documents and fees" of his client).

a. Respondent's representation of Manning

After conclusion of his representation, Respondent failed to provide Manning with his client file, despite multiple requests for it.

b. Respondent's representation of Grauer

Respondent did not provide Grauer or her substitute counsel with a complete copy of her client file. Respondent violated MLRPC 1.16(d) also when he failed to return the unearned fee to Grauer. As explained earlier, we concluded that Respondent violated MLRPC 1.5(a) because most, if not all, of the fee Grauer paid Respondent was unearned.

27

*8. MLRPC 8.1(b)*

MLRPC 8.1(b) compels attorneys to demonstrate candor and cooperation with the admission and disciplinary authorities of the Bar. The Rule provides:

> An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
>
> ****
>
> (b) Fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in that matter, or knowingly fail to respond to a lawful demand for information from an admission or disciplinary authority, except that this rule does not required disclosure of information protected by Rule 1.6.

An attorney violates MLRPC 8.1(b) if he or she does not "answer timely requests from the Attorney Grievance Commission regarding a complaint in a potential disciplinary matter." *Brown*, 426 Md. at 323, 44 A.3d at 360 (citations omitted).

a. Respondent's representation of Manning

Respondent failed to reply to any of Bar Counsel's communications regarding Manning's complaint. Respondent did not submit a response to Manning's complaint.

b. Respondent's representation of Grauer

Respondent failed to respond to the four letters Bar Counsel sent between March and August of 2013 regarding Grauer's complaint. An assistant bar counsel was able to reach Respondent by telephone. In the conversation, Respondent agreed to respond to the letters, but never did. This telephone conversation made Respondent aware of the

complaint and his duty to respond. Ignoring his known obligation to respond to the disciplinary matter was a crystal clear violation of MLRPC 8.1(b).

### 9. MLRPC 8.4(c)[26]

MLRPC 8.4(c) states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The intentional misappropriation of client funds "is an act infected with deceit and dishonesty." *Attorney Grievance Comm'n v. Cherry-Mahoi*, 388 Md. 124, 161, 879 A.2d 58, 81 (2005) (citations omitted) (internal quotations omitted). We have held consistently an attorney's intentional misappropriation of client funds violates MLRPC 8.4(c). *Cherry-Mahoi*, 388 Md. at 159, 879 A.2d at 80 (citations omitted); *see also Attorney Grievance Comm'n v. Nussbaum*, 401 Md. 612, 642, 934 A.2d 1, 18 (2007) (citations omitted); *Attorney Grievance Comm'n v. Snyder*, 368 Md. 242, 261, 793 A.2d 515, 526 (2002).

> [I]n cases in which it is shown that the attorney engaged in systematic and far-ranging malfeasance/non-feasance with other person's money in his or her trust accounts and proceeded to obfuscate and conceal those activities by failing to maintain proper paper or electronic records, the refusal to maintain proper account records permits inferences to be drawn against the offending attorney.

---

[26] The MLRPC 8.4(c) charge is addressed before the 8.4(b) charge because our discussion of 8.4(b) references our analysis of 8.4(c). Specifically, the 8.4(b) requires Petitioner to meet a higher burden of proof and of persuasion than relying exclusively on "an inference for lack of opposing evidence", the latter of which is permitted under our 8.4(c) jurisprudence. The discussion of 8.4(b) becomes clearer also after we reach a conclusion whether Respondent violated 8.4(c) by misappropriating funds.

*Attorney Grievance Comm'n v. Nwadike*, 416 Md. 180, 197, 6 A.3d 287, 297 (citations omitted); *see also Attorney Grievance Comm'n v. Goodman*, 426 Md. 115, 127-28, 43 A.3d 988, 995 (2012) (holding that because respondent could not provide any evidence to refute Bar Counsel's claims regarding misappropriation of money, a permissible inference is that the respondent misappropriated the funds of the client).

a. Respondent's representation of Grauer

Respondent violated MLRPC 8.4(c) multiple times during his representation of Grauer. First, Respondent misrepresented to Grauer that he filed papers on her behalf in the Circuit Court for Cecil County. Respondent violated MLRPC 8.4(c) also by his inferred misappropriation of Grauer's funds and failure to maintain the required financial records accounting for the receipt and disposition of the fee.[27]

*10. MLRPC 8.4(b)*

MLRPC 8.4(b) states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." "A court must only find clear and convincing evidence of conduct that would violate a criminal statute", but "it is well established that a conviction

---

[27] Respondent produced no evidence to counter Bar Counsel's allegation that he misappropriated Grauer's funds. In the absence of any of the required recordkeeping, the hearing judge (and we) may infer that the funds were misappropriated. When no exceptions are filed, and the findings are not erroneous clearly, we are inclined to accept the hearing judge's findings of fact. Respondent's failure to keep adequate records of the money he should have held in trust for Grauer permits an inference that Respondent misappropriated Grauer's funds.

is not required to find a violation of MLRPC 8.4(b)." *Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 729, 93 A.3d 262, 282 (2014) (citations omitted).

Petitioner charged Respondent with a violation of MLRPC 8.4(b) by alleging that Respondent violated Maryland Code (2000, 2010 Repl. Vol.), Business Occupations & Professions Article, § 10-606(b). Pursuant to BOP § 10-606(b),[28] an attorney is only guilty of a criminal misdemeanor if he or she violates willfully BOP § 10-306, which provides that "a lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer." In order for Respondent to have been found to have violated MLRPC 8.4(b), Respondent must have violated BOP § 10-606(b), which criminalizes a violation of BOP § 10-306. According to BOP § 10-606(b), an attorney is guilty of a misdemeanor if the violation of BOP §10-306 was willful.

### a. Violation of BOP §§ 10-306 and 10-606(b)

From the plain language of § 10-306 and the facts of this case, it appears that Respondent violated the provision.[29] Respondent's violation of § 10-306, however, must

---

[28]    BOP § 10-606(b) states that:

> A person who willfully violates any provision of Subtitle 3, Part 1 of this title, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for charitable purposes under § 10-303 of this title, is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 5 years or both.

[29]    The plain language requires that an attorney not use trust money in a manner different from the reason it was entrusted to him. Because we decided already that Respondent misappropriated funds, *supra* 30-31, it follows that he used the trust money

(Continued…)

31

be willful in order to expose him to attorney disciplinary sanctions. *See Attorney Grievance Comm'n v. Adams*, 349 Md. 86, 97-98, 706 A.2d 1080, 1085 (1998) ("We have said that in order to invoke disciplinary proceedings for a violation of section 10-306, section 10-307 requires that the attorney's violation of [section] 10-306 must be *willful.*") (citation omitted) (internal quotation omitted); *Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 482, 671 A.2d 463, 480 (holding that although the attorney trust account was "indisputability out of trust, in violation of BOP § 10-306," the petitioner's failure to prove that the violation was willful meant that the respondent was not subject to discipline for his violation).

BOP § 10-606(b) mirrors the language of BOP § 10-307.[30] Therefore, we conclude that Respondent must be shown to have met the same standard of willfulness in his violation of BOP § 10-306 for it to amount to a criminal act under BOP § 10-606(b). *See Glenn*, 341 Md. at 482, 671 A.2d at 479-80.

To prove willfulness, there must be present more than the inference permitted in our consideration of whether Respondent violated MLRPC 8.4(c). *See Glenn*, 341 Md.

---

(…continued)
paid to him by Grauer in a manner different then the reason for which it was entrusted to him.

[30]    BOP § 10-307 states:

> A lawyer who willfully violates any provision of this Part 1 of this subtitle, except for the requirement that a lawyer deposit trust money in an attorney trust account for charitable purposes under § 10-303 of this subtitle, is subject to disciplinary proceedings as the Maryland Rules provide.

482-83, 671 A.2d at 480 (holding that the hearing judge's finding that, given the absence of evidence, "[the r]espondent must have misused those monies does not demonstrate willfulness"). "In *McBurney v. State*, 280 Md. 21, 371 A.2d 129 (1977), we observed that while the 'willfulness' element of § 10-307 does not require proof of specific criminal intent, it does require at least proof of a general intent." *Glenn*, 341 Md. at 482, 671 A.2d at 480 (citations omitted).

### b. Respondent's Representation of Grauer

Petitioner did not prove, by clear and convincing evidence, that Respondent had the general intent that would constitute a willful violation of BOP § 10-306. Respondent's actions indicate, at worst, exceedingly poor judgment (and a violation of MLRPC 8.4(c)). Poor judgment does not satisfy, however, the intent predicate necessary for the MLRPC 8.4(c) misconduct to rise to a criminal act under § 10-606(b). Because Petitioner has not proven sufficient facts amounting to a criminal act (or an equivalency) by Respondent, we conclude that Respondent's misconduct does not violate MLRPC 8.4(b).

*11. MLRPC 8.4(d)*

MLRPC 8.4(d) states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. MLRPC 8.4(d) is violated when an attorney's conduct "reflects negatively on the legal profession and sets a bad example for the public at large." *Attorney Grievance Comm'n v. Brady*, 399 Md. 1, 22, 922 A.2d 554, 567 (2007) (internal quotations omitted). "The prejudice to the administration of justice may also be measured by the practical implications the

33

attorney's conduct has on the day-to-day operation of our court system." *Attorney Grievance Comm'n v. Smith*, 442 Md. 14, 31, 109 A.3d 1184, 1194 (2015) (quoting *Attorney Grievance Comm'n v. Dore*, 433 Md. 685, 710, 73 A.3d 161, 176 (2013)). "We have held that failure to be punctual in a scheduled court appearance is 'not only detrimental to the administration of justice but also constitute[s] discourteous conduct degrading to the tribunal.'" *Attorney Grievance Comm'n v. Ficker*, 319 Md. 305, 315, 572 A.2d 501, 505-06 (1990) (quoting *Attorney Grievance Comm'n v. Howard,* 282 Md. 515, 523, 385 A.2d 1191, 1196 (1978)). Although being late is discourteous conduct and reason perhaps for contempt, *Ficker*, 319 Md. at 315, 572 A.2d at 506 (citation omitted), a failure to show up at all interferes obviously with the administration of justice. *Id.* The misappropriation of client trust funds is also prejudicial to the administration of justice. *Cherry-Mahoi*, 388 Md. at 159, 879 A.2d at 80 (citations omitted).

The Court concluded also that, when an attorney engages in conduct that supports a violation of MLRPC 8.4(b) and (c), he or she engages in conduct that "establishes a violation of [MLRPC] 8.4(d)." *Reinhardt*, 391 Md. at 222, 892 A.2d at 541 ("Behavior that may seriously injure public confidence in the entire legal profession . . . may be conduct prejudicial to the administration of justice.") (citing *Attorney Grievance Comm'n v. Childress*, 360 Md. 373, 381, 758 A.2d 117, 121 (2000)).

a. <u>Respondent's representation of Manning</u>

Respondent failed to answer discovery requests. The delays that resulted from this action wasted judicial resources and postponed the resolution of the case.

b. <u>Respondent's representation of DeVincent</u>

As with his representation of Manning, Respondent's delay in responding to discovery wasted judicial resources and delayed resolution of the case.

c. <u>Respondent's representation of Grauer</u>

Respondent's misappropriation of Grauer's funds, in violation of MLRPC 8.4(c), is also a violation of MLRPC 8.4(d).

*12. MLRPC 8.4(a)*

MLRPC 8.4(a) states that it is professional misconduct to "violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another . . . ." When an attorney violates any other provision the MLRPC, he or she violates necessarily MLRPC 8.4(a). *Attorney Grievance Comm'n v. Gerace*, 433 Md. 632, 645, 72 A.3d 567, 575 (2013) ("Rule 8.4(a) is violated when other Rules of Professional Conduct are breached.").

a. <u>Respondent's representation of Manning, DeVincent, and Grauer</u>

Respondent violated multiple provisions of the MLRPC while representing each client. Therefore, we agree with the hearing judge that Respondent also violated MLRPC 8.4(a).

**D.  The Appropriate Sanction is Disbarment**

It is said that the purpose of attorney disciplinary proceedings is not to punish the lawyer, but to protect the public from those unfit to practice, bolster the public's confidence in the legal system, and deter other lawyers from engaging in similar misconduct. *See Park*, 427 Md. at 195, 46 A.3d at 1161 (2012) (citing *Attorney*

35

*Grievance Comm'n v. Sucklal*, 418 Md. 1, 10 n.3, 12 A.3d 650, 655 n.3 (2011)). When imposed, a sanction "should be commensurate with the nature and gravity of the violations and the intent with which they were committed, taking into account the particular circumstances of each case and any aggravating or mitigating factors." *Smith*, 442 Md. at 37, 109 A.3d at 1197 (2015) (quoting *Attorney Grievance Comm'n v. Khandpur*, 421 Md. 1, 18, 25 A.3d 165, 175 (2011)). In light of Respondent's numerous and serious violations (and the lack of adequate mitigating factors), we agreed with Bar Counsel's recommendation that Respondent be disbarred from the practice of law in Maryland.

In *Attorney Grievance Comm'n v. Faber*, 373 Md. 173, 817 A.2d 205 (2003), we disbarred an attorney for violations of MLRPC 1.1, 1.2, 1.3, 1.4 and 1.16, finding that repeated neglect of clients is sufficient justification alone for disbarment. *Faber*, 373 Md. at 181-83, 817 A.2d at 209-11 (citations omitted); *see also Attorney Grievance Comm'n v. Wallace*, 368 Md. 277, 290-91, 793 A.2d 535, 543-44 (2002) (holding that disbarment is an appropriate sanction for attorneys who neglect their clients, even without a previous disciplinary history)*; Attorney Grievance Comm'n v. Manning*, 318 Md. 697, 703-06, 569 A.2d 1250, 1253-54 (1990) (holding that disbarment is the appropriate sanction for persistent neglect as it is evidence of a lawyer's disregard for his obligation). Failure to return unearned fees is cause for disbarment as well. *Attorney Grievance Comm'n v. Shakir*, 427 Md. 197, 207, 46 A.3d 1162, 1168. Respondent violated all of those rules (some multiple times) in his representation of Manning, DeVincent and Grauer. Respondent's repeated neglect of his clients is enough, on its own, to warrant disbarment.

Respondent violated also MLRPC 1.5(a) and 1.15(a) and (c), which are related to the mistreatment of client fees. As we have stated often, such conduct will result frequently in disbarment. *See Cherry-Mahoi*, 388 Md. at 161, 879 A.2d at 80 (citing *Attorney Grievance Comm'n v. James*, 385 Md. 637, 666, 870 A.2d 229, 245 (2005) (other citations omitted). The entrustment of a client's money involves a responsibility of the highest order. "Appropriating any part of these funds to their own use and benefit without clear authority to do so cannot be tolerated." *Cherry-Mahoi*, 388 Md. at 161, 879 A.2d at 80 (quoting *Attorney Grievance Comm'n v. Owrutsky*, 322 Md. 334, 345, 587 A.2d 511, 516 (1991)*; see also Tinsky*, 377 Md. 646, 835 A.2d 542 (2003).

Respondent also violated MLRPC 8.4(a), (c), and (d). Violations of MLRPC 8.4 center on the fitness of an attorney to practice law. Although a single violation of MLRPC 8.4 does not compel disbarment in every situation,[31] a pattern of repeated offenses indicates an indifference to a legal obligation.

Respondent demonstrated such a pattern. Respondent failed repeatedly his clients in the same manner. Respondent's disregard for: (a) filing timely court documents; (b) his client's wishes; and, (c) most significantly, the protection of his client's trust money, indicates that Respondent lacks requisite core characteristics required to continue practicing law in Maryland. *See* MLRPC 8.4, Comment 2.

---

[31] Although we find often that a pattern of MLRPC 8.4(a) and (d) violations results in disbarment, a single violation of 8.4(c) can be the occasion of disbarment. *Attorney Grievance Comm'n v. Foltz*, 411 Md. 359, 413, 983 A.2d 434, 466 (2009) ("[W]hen an attorney engages in dishonest or fraudulent conduct as proscribed in M[L]RPC 8.4(c), we do not discuss 'degrees' of dishonesty, but generally order disbarment, absent compelling extenuating circumstances.").

Respondent violated MLRPC 8.4 multiple times. Most intolerably, he misappropriated client funds and misrepresented his activities to Grauer. Dishonest conduct, when done intentionally, as engaged in by Respondent during his representation of Grauer, is beyond excuse, and disbarment "represents the default sanction." *Attorney Grievance Comm'n v. Foltz*, 411 Md. 359, 413, 983 A.2d 434, 466 (2009); *see also Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001). Because Respondent provided no excuse whatsoever for his actions, disbarment is appropriate here.

Finally, Respondent violated MLRPC 8.1. Respondent's otherwise unacceptable behavior was "exacerbated by his complete failure to respond to Bar Counsel's investigation." *Attorney Grievance Comm'n v. Lara*, 418 Md. 355, 365, 14 A.3d 650, 656 (2011). Unresponsiveness seems the across-the-board hallmark of Respondent.

The present case is similar to violations by the respondent in *Wallace*, 368 Md. 277, 793 A.2d 535. In *Wallace* we stated:

> The record in the case at bar does not indicate that respondent had received any previous reprimands or sanctions from this Court; nevertheless the volume and severity of the complaints lead us to conclude that the appropriate sanction is disbarment. Respondent has engaged in a pattern of conduct that only the most severe sanction of disbarment will provide the protection to the public that this procedure is supposed to provide. Respondent's lack of diligence, his lack of preparation, his failure to communicate with his clients, his charging of unreasonable fees, his failure to account for and return monies, his misrepresentations and his failure to comply with Bar Counsel's requests all lead to the most severe sanction of disbarment.

*Wallace*, 368 Md. at 293, 793 A.2d at 545. Respondent demonstrates the same shortcomings. It is clear that disbarment is the appropriate sanction necessary to protect the public and signal to the Bar the seriousness assigned by the Court to this array of misconduct.