*Attorney Grievance Commission of Maryland v. Deidra Nicole Proctor*,
Misc. Docket AG No. 1, September Term, 2020. Opinion by Gould, J.


**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT**

Court of Appeals disbarred lawyer who made intentional misrepresentations to multiple clients, failed to adequately communicate with a client, represented a client while she was not permitted to practice law, overcharged clients for fees and expenses, and also made misrepresentations to the court and Bar Counsel. Such conduct violated Maryland Attorneys' Rules of Professional Conduct 19-301.1 (Competence), 19-301.2 (Scope of Representation and Allocation of Authority Between Client and Attorney), 19-301.3 (Diligence), 19-301.4 (Communication), 19-301.5 (Fees), 19-301.16 (Declining or Terminating Representation), 19-303.3 (Candor Toward the Tribunal), 19-305.5 (Unauthorized Practice of Law), 19-308.1 (Bar Admission and Disciplinary Matters), and 19-308.4 (Misconduct).

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 1

September Term, 2020

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

*v.*

DEIDRA NICOLE PROCTOR
_____

*Getty, C.J.,
Watts
Hotten
Booth
Biran
Gould
McDonald, Robert N.
    (Senior Judge, Specially Assigned)

JJ.
_____

Opinion by Gould, J.
_____

Filed:  July 25, 2022

*Getty, C.J., now a Senior Judge, participated in the hearing and conference of this case while an active member of this Court.  After being recalled pursuant to Md. Const., Art. IV, § 3A, he also participated in the decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On March 11, 2020, the Attorney Grievance Commission of Maryland ("AGC"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action (the "Petition") against Deidra Nicole Proctor, pursuant to Maryland Rule 19-721. The Petition alleged that Ms. Proctor violated numerous provisions of the Maryland Attorneys' Rules of Professional Conduct ("MARPC").[1] In accordance with Maryland Rules 19-722(a) and 19-727, we assigned the Petition to the Honorable Crystal D. Mittelstaedt ("hearing judge") to hold an evidentiary hearing and render findings of fact and conclusions of law.

The hearing was held on September 20, 2021. Bar Counsel presented its case with no witnesses and 58 exhibits, including the requests for admissions that were deemed admitted. Ms. Proctor appeared *pro se*. In lieu of closing arguments, the hearing judge asked the parties to submit post-hearing proposed findings of fact and conclusions of law. Only Bar Counsel chose to do so.

On November 4, 2021, the hearing judge issued Findings of Fact and Conclusions of Law (the "findings"), finding by clear and convincing evidence that Ms. Proctor violated MARPC 1.1 (Competence), 1.2(a) (Scope of Representation and Allocation of Authority Between Client and Attorney), 1.3 (Diligence), 1.4(a) and (b) (Communication), 1.5(a) (Fees), 1.16(d) (Declining or Terminating Representation), 3.3 (Candor Towards the

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the MARPC and recodified without substantive modification in Title 19, Chapter 300 of the Maryland Rules. Given that there are no material differences between the two versions and Ms. Proctor committed violations of said rules prior to and after their renaming, we will refer to all violations herein under their shorter designations as permitted by Rule 19-300.1(22)—*e.g.*, "Rule 1.1" as opposed to "Rule 19-301.1."

Tribunal), 5.5(a) and (b) (Unauthorized Practice of Law), 8.1(a) and (b) (Bar Admission and Disciplinary Matters), and 8.4 (a), (c), and (d) (Misconduct).[2]

Pursuant to Maryland Rule 19-728(b), Ms. Proctor filed exceptions to the findings.

Oral arguments were held before this Court on March 8, 2022. By Per Curiam Order issued March 9, 2022, this Court disbarred Ms. Proctor. *Attorney Grievance Comm'n v. Proctor*, 477 Md. 631 (2022). We now explain why.

## BACKGROUND

### A.      *Procedural Context*.

On November 11, 2020, Ms. Proctor was personally served with the Petition, interrogatories, a request for production of documents, and a request for admission of fact and genuineness of documents. Pursuant to Maryland Rules 2-421(b), 2-422(c), and 2-424(b), she had 45 days to respond to Bar Counsel's discovery requests.[3] Ms. Proctor failed to respond to either the Petition or the discovery requests, prompting Bar Counsel to move for an order of default on January 26, 2021. Ms. Proctor filed an untimely opposition to the motion, claiming she was never served with the Petition. On March 1, 2021, Ms. Proctor filed her answer to the Petition.

On March 23, 2021, Bar Counsel withdrew its motion for default and re-served its discovery requests on Ms. Proctor by email and regular mail, along with a notice of service.

---

[2] The hearing judge's findings explain Ms. Proctor's violation of MARPC 8.4(d), but the final order states MARPC 8.4(b). We believe that was a typographical error.

[3] Pursuant to these Rules, she had an extra 15 days beyond the typical 30-day response time to submit the discovery responses because the discovery was served with the Petition.

Once again, she did not respond. As a result, Bar Counsel filed a motion seeking sanctions and that its requests for admissions of fact and genuineness of documents be admitted in accordance with Maryland Rule 2-424(b), or alternatively, an order compelling Ms. Proctor to answer the requested discovery. On July 16, 2021, the hearing judge granted Bar Counsel's motion and ordered Ms. Proctor to respond to the discovery requests by July 26, 2021.

Ms. Proctor failed to comply with the discovery order, prompting Bar Counsel to again move for sanctions, pursuant to Maryland Rules 2-432(a) and 2-433, seeking to (1) have the court deem admitted the requests for admissions of fact and genuineness of documents; (2) strike Ms. Proctor's answer; (3) admit the averments in the Petition; and (4) preclude Ms. Proctor from presenting witnesses or discovery at the hearing and preclude her testimony related to any facts not related to mitigation. On September 16, 2021, the hearing judge granted Bar Counsel's motion and prohibited Ms. Proctor from presenting any documents at trial that were not produced in discovery.

## B. *Factual Findings*.

Ms. Proctor has been a member of the Maryland Bar since December 13, 2000. She was temporarily suspended for failing to pay her annual assessment to the Client Protection Fund for: April 8 - 17, 2003; April 7 - July 4, 2004; April 10, 2007 - February 28, 2008; March 15 - April 5, 2012; and March 20 - April 3, 2014. Ms. Proctor continued to practice law during her periods of suspension.

3

Between September 10, 2009 and March 8, 2010, Ms. Proctor was decertified from the practice of law due to her failure to submit her pro bono reporting forms. Despite her decertification, Ms. Proctor continued to practice law.

### 1. *Representation of Robin R. Belfast*.

Around January 18, 2006, Robin R. Belfast retained Ms. Proctor to represent her in connection with her claim of age and race discrimination against her former employer, Verizon Communications ("Verizon"). Verizon dismissed Ms. Belfast after 27 years, due to a reduction in work force. Prior to retaining Ms. Proctor, Ms. Belfast had filed a claim with the Equal Employment Opportunity Commission, which issued a right to sue letter on December 29, 2005, giving Ms. Belfast 90 days to file a civil complaint against Verizon.

Ms. Proctor failed to file the complaint. Over the next six years, Ms. Proctor not only failed to disclose that fact to Ms. Belfast, but she affirmatively misrepresented the status of the matter, that the litigation was underway and ongoing. Based on such misrepresentations, Ms. Belfast believed that Ms. Proctor was actively litigating her case and engaging in settlement discussions.

For example, on March 12, 2010, Ms. Belfast wrote Ms. Proctor to inquire about the status of her case. Three days later, Ms. Proctor responded with intentionally misleading statements, indicating that she was working to resolve the matter and "looking into additional details" of a potential witness.

Between August 20, 2010 and December 2011, Ms. Proctor continued to mislead Ms. Belfast by stating that settlement discussions were ongoing, that she was having discussions with Verizon, and that a trial was scheduled for March 29, 2012.

After several additional communications indicating that the case was pending, on March 21, 2012, Ms. Proctor finally admitted to Ms. Belfast that there was no lawsuit pending against Verizon. Ms. Proctor feigned uncertainty whether the blame rested with her for failing to file the complaint, or with the court for failing to properly docket it. In April 2012, Ms. Proctor stated that she would compensate Ms. Belfast for the case "should that be necessary," and then falsely indicated that more could be done on the case and informed Ms. Belfast that she was going to "focus[] on the courts."

On August 13, 2012, Ms. Proctor offered Ms. Belfast $250,000 to settle a potential malpractice claim arising from her neglect of Ms. Belfast's case. Ms. Proctor did not advise Ms. Belfast that she had a conflict of interest and that Ms. Belfast should seek the advice of other counsel in connection with the proposed settlement. Without the benefit of counsel, Ms. Belfast accepted the offer. On October 9, 2012, Ms. Proctor prepared and provided to Ms. Belfast a written settlement agreement which inexplicably reduced her payment obligation to $200,000. Again without the benefit of counsel, Ms. Belfast agreed to the twenty percent reduction in the settlement amount. Ms. Belfast repeatedly asked for a copy of her file, but Ms. Proctor never provided it to her.

Between January and September 2013, Ms. Proctor made empty promises, stating that she was waiting for a personal injury settlement and trying to obtain a loan in order to pay the settlement. When neither source of funds came through, in October 2013, Ms. Proctor offered to pay Ms. Belfast $1,000 a month towards the settlement. Ms. Proctor made her first payment in November 2013, which was returned for insufficient funds. In

January 2014, Ms. Proctor made her first $1,000 payment and thereafter made only minimal, sporadic payments.

In July 2017 and January 2018, fed up with Ms. Proctor's sporadic and unreliable payments, Ms. Belfast told Ms. Proctor that she was going to file a complaint with the AGC and the Maryland State Bar Association if Ms. Proctor did not pay her debt in full immediately. Ms. Proctor attempted to dissuade Ms. Belfast from contacting the AGC by knowingly misrepresenting to Ms. Belfast that the settlement amount would likely be re-litigated and would "result in a lower amount due, which may ultimately resolve this matter sooner." When Ms. Belfast filed her complaint with the AGC in January 2018, Ms. Proctor still owed her approximately $224,000, inclusive of late fees stipulated in the settlement agreement.

### 2. *Representation of Antonia G. Colvin.*

On or about October 13, 2017, Antonia G. Colvin retained Ms. Proctor to represent her in her capacity as personal representative for her husband's estate (the "Estate"). Ms. Proctor agreed to defend a $55,942 disallowed claim made against the Estate by King T. Leatherbury Associates, Inc. ("Leatherbury"). When Ms. Proctor was retained, Ms. Colvin had already been served with the complaint as well as discovery requests. The deadline for completion of discovery was March 18, 2018.

On November 13, 2017, Ms. Proctor entered her appearance and filed an answer to the complaint. Ms. Proctor did not, however, respond to the discovery requests or discuss them with Ms. Colvin. Shortly thereafter, Leatherbury's counsel served a second request

for production of documents and a notice of deposition. Ms. Proctor stated that she was unavailable on the deposition date.

On February 19, 2018, Leatherbury's counsel wrote Ms. Proctor a letter to resolve its unanswered discovery requests and schedule a new deposition date. Ms. Proctor replied on February 22, 2018 and indicated that she intended to file a motion to dismiss and would request an extension for Ms. Colvin's discovery responses until after the motion to dismiss was resolved. The next day, Leatherbury moved for sanctions due to Ms. Colvin's discovery failure. Ms. Proctor failed to respond to the motion.

On March 27, 2018, the court granted the motion for sanctions, ordered Ms. Colvin to respond to the discovery request within ten days, and ordered Ms. Colvin to pay the fees incurred by Leatherbury's counsel in connection with the motion. Ms. Proctor never disclosed any of this to Ms. Colvin.

The parties participated in a settlement conference, which did not resolve the claim. Trial was scheduled for December 13, 2018.

Leatherbury filed a second motion for sanctions as a result of Ms. Colvin's failure to comply with the March 27 order. In opposition to this motion, Ms. Proctor falsely stated Ms. Colvin's responses to discovery had been mailed on April 20, 2018. In fact, Ms. Proctor did not mail the responses until November 26, 2018.

Ms. Proctor filed a pretrial statement and proposed jury instructions and voir dire, which were returned by the court as being deficient.

On December 11, 2018, the court held a hearing on the second motion for sanctions. Neither Ms. Colvin, who was unaware of the hearing, nor Ms. Proctor appeared. Ms.

7

Proctor later claimed she thought the hearing would be conducted by telephone. In their absence, the court granted the second motion for sanctions, entered default judgment against Ms. Colvin and the Estate, finding a willful failure to comply with the March 27th order, and converted the December 13, 2018 trial to a hearing on damages.

Prior to the damages hearing, the parties reached an agreement under which Ms. Colvin would pay Leatherbury $20,000 in full satisfaction of its claims. Ms. Colvin had 45 days from December 13, 2018 to make payment in full. As a result, the damages hearing was rescheduled for February 14, 2019, in the event that the parties did not fulfill their obligations under the settlement agreement. Ms. Colvin asked Ms. Proctor for information regarding the settlement, but Ms. Proctor failed to respond. As she had no knowledge of the settlement details, Ms. Colvin did not make the settlement payment within the 45-day period. In January 2019, the court granted Leatherbury's motion for attorneys' fees in the amount of $2,600.

On February 12, 2019, Leatherbury's counsel informed Ms. Proctor that the $20,000 settlement was off the table, and that the price of settlement had gone up to $35,000. Ms. Proctor counseled Ms. Colvin to reject the settlement because, she predicted, she could get a more favorable result at the February 14 hearing. Unaware that the merits of Leatherbury's claim had already been determined and that the purpose of the February 14, 2019 hearing was merely to determine damages, Ms. Colvin rejected the $35,000 offer. On February 14, 2019, Leatherbury was awarded the full amount of its claim totaling $55,942.

Ms. Colvin terminated Ms. Proctor's representation on March 8, 2019. She requested a copy of her file, but Ms. Proctor never responded or provided her with a copy.

### 3. *Representation of Steven W. Barrow*.

Steven W. Barrow retained Ms. Proctor on February 21, 2018 to represent him in connection with his divorce from Alcinda Cirwithian. Under their fee agreement, Ms. Proctor agreed to charge $300 per hour. Mr. Barrow paid an initial retainer of $5,000.

On or about February 22, 2018, Mr. Barrow was served with process. Ms. Proctor failed to file an answer or enter her appearance or file a motion to transfer venue, as she had stated she would do.

Mr. Barrow was served with discovery, which he provided to Ms. Proctor. Ms. Proctor failed to respond. Ms. Cirwithian filed a motion for a default judgment, and the court entered an order of default against Mr. Barrow on April 11, 2018. Ms. Proctor reacted to the order of default by entering her appearance, promising opposing counsel that discovery responses would be forthcoming within days, and filing an untimely motion to transfer venue.

The discovery responses were not forthcoming. Opposing counsel filed a motion for sanctions and served Ms. Proctor with requests for admissions. On May 7, 2018, Ms. Proctor filed responses to the discovery requests and an opposition to the motion for sanctions, assuring the court that the responses had been provided. As a result, the motion for sanctions was denied as moot. Ms. Proctor also filed a motion to vacate the default judgment, which the court granted.

9

The motion to transfer venue was denied. The court issued a scheduling order requiring all discovery be completed by August 23, 2018. Ms. Proctor never provided Mr. Barrow with a copy of the scheduling order, nor did she inform him of the dates and deadlines set forth therein.

On July 25, 2018, Ms. Proctor served untimely discovery requests on Ms. Cirwithian.

On August 22, opposing counsel filed a second motion to compel and for sanctions due to Mr. Barrow's deficient discovery responses. Mr. Barrow had provided supplemental responses to Ms. Proctor, but Ms. Proctor failed to pass them along to opposing counsel. That same day, Ms. Proctor moved for an extension of the discovery deadline, which the court denied.

The scheduling order had imposed a deadline for filing exhibit lists in advance of the pendente lite hearing. Ms. Proctor failed to file the exhibit list, resulting in a court order precluding Mr. Barrow from introducing any exhibits at the hearing.

On September 6, Ms. Proctor filed an opposition to the second motion for sanctions, claiming that she had filed extensive discovery responses, and was continuing to supplement them.

On September 10, the court denied Ms. Proctor's request for an extension of the discovery deadline and scheduled a hearing on the second motion for sanctions.

On October 19, the court granted opposing counsel's second motion to compel and for sanctions. The court gave Mr. Barrow ten days to supplement his deficient responses. Ms. Proctor failed to inform Mr. Barrow of this deadline; instead, she falsely stated that

10

the court made no finding and requested further argument. The court ordered Mr. Barrow to pay attorneys' fees in connection with the motion. After having paid Ms. Proctor $15,230 in fees and another $1,200 for transcripts,[4] Mr. Barrow terminated Ms. Proctor's representation.

On December 4, Mr. Barrow contacted Ms. Proctor to return the monies he had paid for her services. Ms. Proctor never responded to Mr. Barrow's request.

### 4. *Representation of Norman Ireland.*

On January 1, 2019, Ms. Proctor was retained by Norman Ireland in connection with his divorce from Althea Jacques-Ireland. Ms. Proctor entered her appearance and filed an answer to the complaint. Ms. Proctor, however, did not serve a copy of the answer on Ms. Jacques-Ireland and declined to respond to her requests for a copy.

### 5. *Bar Counsel's Investigation.*

### a. *Ms. Belfast's Complaint.*

On January 20, 2018, Ms. Belfast filed a complaint against Ms. Proctor with the AGC. Bar Counsel sent a letter to Ms. Proctor requesting her response to the complaint by February 21, 2018. Ms. Proctor failed to respond until February 27, 2018, and then asked Bar Counsel for an extension until March 12, 2018.

On March 12, 2018, Ms. Proctor responded, stating that, due to "considerable passage of time," she had "no independent memory of specific dates, witness names or many other facts related to" Ms. Belfast's case. However, she did admit that she did not

---

[4] The transcripts cost only $243.

11

file or follow-up regarding the docketing of Ms. Belfast's complaint and that she ultimately resolved a potential malpractice claim against her. Ms. Proctor's response omitted key details, including the numerous misrepresentations that she made to Ms. Belfast and the paltry amount she paid towards the settlement. Bar Counsel was not satisfied with this response and requested additional details on August 13, 2018.

On November 5, 2018, Ms. Proctor responded to Bar Counsel's August request. She falsely stated that she disclosed her misrepresentation in 2008 and immediately thereafter took responsibility for this omission. She further stated that it took until 2012 to reach a settlement with Ms. Belfast due to extended negotiations concerning Ms. Belfast's inflated expectations of the value of her claim.

### b. Ms. Colvin's Complaint.

On March 11, 2019, Ms. Colvin filed a complaint against Ms. Proctor with the AGC. Bar Counsel requested a response by April 12, 2019. In response to Ms. Proctor's request for more time, Bar Counsel extended the deadline to May 12, 2019. On June 28, 2019, after having not received a response, Bar Counsel wrote to Ms. Proctor requesting a response by July 12, but again received no response. On August 21, one of Bar Counsel's investigators traveled to Ms. Proctor's house and was advised to leave Bar Counsel's letters at her front door. Again, Ms. Proctor failed to provide any response.

### c. Mr. Barrow's Complaint.

On March 27, 2019, Mr. Barrow filed a complaint against Ms. Proctor with the AGC. On April 16, 2019, Bar Counsel requested that Ms. Proctor respond to Mr. Barrow's complaint. Having received no response, Bar Counsel again requested a response to the

12

complaint in May and June. Ms. Proctor failed to respond, even after one of Bar Counsel's investigators left Bar Counsel's letters at her front door on August 21.

### d. *Ms. Jacques-Ireland's Complaint.*

On April 25, 2019, Ms. Jacques-Ireland filed a complaint against Ms. Proctor with the AGC. On May 8, 2019, Bar Counsel requested Ms. Proctor's response to the complaint by May 24, 2019. Having received no response, Bar Counsel reiterated the same request in June and July. Each time, Ms. Proctor did not respond. Ms. Proctor also did not respond after Bar Counsel's investigator left Bar Counsel's letters at her front door on August 21.

## STANDARD OF REVIEW

This Court has original jurisdiction over attorney discipline proceedings and conducts an independent review of the hearing judge's findings of fact and conclusions of law. *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 178 (2015). We review the hearing judge's conclusions of law without deference. Md. Rule 19-740(b)(1). We may treat any facts not challenged by exceptions as established. Rule 19-740(b)(2)(A).

Otherwise, we review the record to determine whether the hearing judge's factual findings "have been proved by the requisite standard of proof set out in Rule 19-727(c)." Rule 19-740(b)(2)(B). Bar Counsel must prove its allegations of misconduct by clear and convincing evidence. Rule 19-727(c). The attorney must prove any affirmative defenses and any mitigating or extenuating circumstances by a preponderance of the evidence. *Id.*

**DISCUSSION**

## A.    *Exceptions to the Hearing Judge's Findings of Fact*.

Either party may file exceptions to the hearing judge's conclusions of law or findings of fact. Rule 19-728(b). Here, Bar Counsel has not filed any exceptions. Ms. Proctor, however, has filed five broadly-worded exceptions to the hearing judge's findings, as follows: (1) all findings related to Ms. Belfast and the unauthorized practice of law due to the limitations period for bringing this Petition; (2) all the findings based on admissions established pursuant to what she contends were erroneous discovery sanctions; (3) the court's conduct in the May 6, 2021 hearing; (4) all findings related to the unauthorized practice of law, which were erroneous; and (5) all findings relating to Mr. Barrow, Ms. Colvin, and Ms. Jacques-Ireland, because she "had evidence relating both to the truthfulness of the allegations and to mitigating factors." It is unclear whether the latter two exceptions are to factual findings, conclusions of law, or both.

### 1.  *Statute of Limitations/Laches Exception*.

In connection with the Belfast matter and the claims that she is liable for the unauthorized practice of law, Ms. Proctor argues that her due process rights were violated by the AGC's lengthy 14-year delay in filing its Petition. She contends she was prejudiced by this delay by virtue of a failing memory with the passage of time and that she no longer has her notes from the case.

We are not persuaded. Ms. Proctor bases her statute of limitations argument on Section 5-101 of the Courts and Judicial Proceedings Article of the Maryland Code (2006, 2020 Repl. Vol.), which provides that "[a] civil action at law shall be filed within three

14

years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Ms. Proctor provides no support for her proposition that a disciplinary action of this kind is subject to the statute of limitations. In fact, it isn't. *See Anne Arundel Cnty. Bar Ass'n, Inc. v. Collins*, 272 Md. 578, 582 (1974); *Attorney Grievance Comm'n v. Penn*, 431 Md. 320, 335 (2013). Thus, we overrule Ms. Proctor's statute of limitations exception.

To the extent Ms. Proctor is relying on the doctrine of laches, that too is unavailing to her. In *Attorney Grievance Comm'n v. Cassilly*, 476 Md. 309, 348 (2021), we held that, "with the possible exception of cases involving both extraordinary circumstances of delay and actual prejudice resulting in a clear due process violation, applying the doctrine of laches to attorney discipline proceedings would not be consistent with the goal of such proceedings, which is to protect the public." Thus, a respondent has a steep hill to climb to succeed with a laches defense.

Here, Ms. Proctor does not come within striking distance of meeting this exacting standard. The delays in the Belfast matter were of her own making and directly resulted from her intentional and continuous misrepresentations and her other professional misconduct. Ms. Belfast did not become aware that Ms. Proctor never filed her complaint against Verizon until 2012, six years after Ms. Proctor was retained and six years after Ms. Proctor failed to file. Ms. Proctor's malfeasance continued with the drafting of an agreement to settle Ms. Belfast's claims against her because she neither informed Ms. Belfast of the conflict of interest between them nor advised her to seek advice from independent counsel. Between 2012 and 2013, Ms. Proctor continued to make empty

15

promises of payment and made minimal periodic payments for the next four years. In late 2017, after Ms. Belfast indicated she intended to contact the AGC regarding Ms. Proctor's conduct and her failure to make payments, Ms. Proctor made a last-ditch effort to prevent intervention from the AGC by making knowingly false statements to Ms. Belfast regarding the actions the AGC would take.

Ms. Belfast filed her claim with the AGC in January 2018. The AGC began investigating Ms. Proctor's conduct and more complaints began rolling in. Specifically, Ms. Colvin filed her complaint on March 11, 2019, Mr. Barrow filed his complaint on March 27, 2019, and Ms. Jacques-Ireland filed her complaint on April 25, 2019. Due to the influx of complaints, the AGC had more to investigate and, for efficiency purposes, reasonably brought a consolidated proceeding to address all of the complaints. Moreover, Ms. Proctor refused to cooperate with the investigation. Her misconduct unquestionably caused delays in the investigation and contributed significantly to the Petition not being filed until 2020. As such, Ms. Proctor has failed to meet the steep requirements of a viable laches defense.

We therefore overrule Ms. Proctor's exceptions based on laches.[5]

### 2. *General Exception to all Findings of Fact.*

Ms. Proctor excepts to all the hearing judge's findings of fact because they resulted from facts established as a result of allegedly improper discovery sanctions. She contends

---

[5] Ms. Proctor's only general exception to the hearing judge's findings pertaining to Ms. Belfast was based on a violation of due process. Given that we overruled this exception, and she did not except to the hearing judge's finding on any other basis, we see no basis to address her unsupported claim.

16

that she was never properly served with the discovery requests, and therefore she was not required to respond. She complains that the hearing judge declined her request for a continuance to give her time to supplement her discovery responses, and sanctioned her without finding that the delay prejudiced Bar Counsel.

Ms. Proctor's exceptions are without merit. After agreeing to withdraw the motion for default, Bar Counsel re-served Ms. Proctor with the discovery requests both by regular mail and email, as confirmed in the notice of service provided therewith. Ms. Proctor acknowledged receipt of that email. Ms. Proctor claims she never received the hard copies of the discovery requests, and that the requests for admissions had over 1,400 pages of documents attached thereto. But Ms. Proctor never moved to strike the service as improper or deficient. Nor did she move for a protective order because the discovery was too burdensome. *See Attorney Grievance Comm'n v. McCarthy*, 473 Md. 462, 484 n.8 (2021).

Bar Counsel patiently gave Ms. Proctor several opportunities to comply with the discovery requests before moving for sanctions. As to the first motion for sanctions, the hearing judge chose not to sanction Ms. Proctor in favor of giving her an opportunity to come into compliance with her discovery obligations. The hearing judge gave Ms. Proctor 10 days to fully respond in an order that was both emailed and mailed to her. Nonetheless, Ms. Proctor failed to comply, claiming she didn't get the order because she moved out of her home, and the U.S. Postal Service failed to forward her mail. And she contends that she didn't check her email because she was "separated from her computer on an ongoing basis." The hearing judge justifiably faulted Ms. Proctor for her failure to keep informed about the case.

17

We will now address Ms. Proctor's failure to timely respond to the requests for admissions.  Maryland Rule 2-424(b) provides:

> Each matter of which an admission is requested shall be deemed admitted unless, within 30 days after service of the request or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later, the party to whom the request is directed serves a response signed by the party or the party's attorney.  As to each matter of which an admission is requested, the response shall set forth each request for admission and shall specify an objection, or shall admit or deny the matter, or shall set forth in detail the reason why the respondent cannot truthfully admit or deny it. The reasons for any objection shall be stated.  A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and deny or qualify the remainder.  A respondent may not give lack of information or knowledge as a reason for failure to admit or deny unless the respondent states that after reasonable inquiry the information known or readily obtainable by the respondent is insufficient to enable the respondent to admit or deny.  A party who considers that a matter of which an admission is requested presents a genuine issue for trial may not, on that ground alone, object to the request but the party may, subject to the provisions of section (e) of this Rule, deny the matter or set forth reasons for not being able to admit or deny it.

Under this Rule, the requests were automatically deemed admitted due to Ms. Proctor's failure to timely respond.  Subsection (d) of this Rule provides that a party in Ms. Proctor's shoes may move to withdraw the admissions to the requests, which the court may grant if it "finds that it would assist the presentation of the merits of the action and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining the action or defense on the merits."  Here, Ms. Proctor filed no such motion.  The requests were, therefore, properly deemed admitted.

Turning now to the sanctions against Ms. Proctor, Maryland Rule 2-432(a) provides:

18

A discovering party may move for sanctions under Rule 2-433 (a), without first obtaining an order compelling discovery under section (b) of this Rule, if a party or any officer, director, or managing agent of a party or a person designated under Rule 2-412 (d) to testify on behalf of a party, fails to appear before the officer who is to take that person's deposition, after proper notice, or if a party fails to serve a response to interrogatories under Rule 2-421 or to a request for production or inspection under Rule 2-422, after proper service. Any such failure may not be excused on the ground that the discovery sought is objectionable unless a protective order has been obtained under Rule 2-403.

A hearing judge is "vested with broad discretion in imposing sanctions when a party fails to comply with [discovery] rules." *Attorney Grievance Comm'n v. Kreamer*, 404 Md. 282, 342 (2008). Our role is to review the record to determine whether the court considered the relevant factors identified in *Taliaferro v. State*, 295 Md. 376 (1983). *See Butler v. S & S Partnership*, 435 Md. 635, 650 (2013). The *Taliaferro* factors are:

whether the disclosure violation was technical or substantial, the timing of the ultimate disclosure, the reason, if any, for the violation, the degree of prejudice to the parties respectively offering and opposing the evidence, whether any resulting prejudice might be cured by a postponement and, if so, the overall desirability of a continuance.

*Id.* (quoting *Taliaferro*, 295 Md. at 390-91).

At the hearing on the second sanctions motion, Ms. Proctor went through these factors and argued that they weighed against sanctioning her and in favor of another extension of the 120-day deadline for commencing the hearing.[6] The transcript from the

---

[6] Rule 19-727(d) provides that "[u]nless extended by the Court of Appeals, the [attorney disciplinary] hearing shall be completed within 120 days after service on the attorney of the order entered under Rule 19-722." As later discussed, earlier in the case, the parties filed a Consent Motion for Extension of Time to Complete Hearing of Charges (the "consent motion"), which this Court granted, due to the service issue raised by Ms. Proctor.

19

hearing shows that the hearing judge did, in fact, consider Ms. Proctor's arguments. Indeed, the hearing judge took the matter under advisement and issued a written order later that day.

We are satisfied from our review of the record that the hearing judge understood the facts and circumstances surrounding Ms. Proctor's discovery failures and acted well within her considerable discretion in entering the sanctions order.[7]  Accordingly, we overrule Ms. Proctor's exceptions based on the discovery rulings made by the hearing judge.

### 3. General Exceptions to the May 6, 2021 Hearing.

We turn now to Ms. Proctor's exceptions to the findings based on the hearing judge's conduct at the May 6, 2021 hearing.  Ms. Proctor asserts that the hearing judge informed her that before a hearing would be scheduled in this case, Bar Counsel would need to file a motion with the Court of Appeals and wait for that motion to be granted. This, she contends, gave Ms. Proctor "no choice" except to consent to an extension.  Ms. Proctor further contends that she was unfamiliar with the process at that time, and was therefore strong-armed into consenting to this motion.  She argues that the hearing judge's instruction was incorrect, erroneous, and resulted in unspecified prejudice to her.

We overrule this exception.  The May 6 hearing was a scheduling conference where all parties agreed that (1) all discovery would be completed by July 30, 2021; (2) all

_____

[7] In any event, the hearing judge's sanction prohibiting her from introducing documents was hardly a draconian measure, given Ms. Proctor's contention that she had no documents to produce.

20

dispositive motions and motions in limine would be filed by August 13, 2021; and (3) that a two-day, non-jury trial would be held on September 20 and 21, 2021.

Pursuant to Maryland Rule 19-272(e), Ms. Proctor's attorney grievance matter was required to be heard within 120 days from the date on which she was served. The parties agreed to use February 19, 2021 as the date of service. Based on this date, the 120-day deadline would be June 19, 2021. Pursuant to Rule 19-722(d), Bar Counsel was required to file the consent motion to obtain this Court's approval for an extension of time.

Ms. Proctor's exception fails for three simple reasons. *First*, she consented to the motion; that she did so lacking a familiarity with the process was of her own choosing. *Second*, the extension of the 120-day period was necessitated because of the issue of service that Ms. Proctor raised. *Third*, Ms. Proctor failed to articulate any prejudice to her from the extension, and no such prejudice is discernible in this record.

## B.     *Conclusions of Law*.

From the foregoing factual findings, the hearing judge found by clear and convincing evidence that Ms. Proctor violated MARPC 1.1, 1.2(a), 1.3, 1.4(a) and (b), 1.5(a), 1.16(d), 3.3(a), 5.5(a) and (b), 8.1(a) and (b), and 8.4(a), (c), and (d).

We will now address each of the hearing judge's conclusions of law. In sum, we agree with the hearing judge's findings and overrule Ms. Proctor's remaining exceptions.

### 1. *MARPC 1.1 (Competence)*.

MARPC 1.1 requires attorneys to give competent representation to all clients. In order to provide competent representation to a client, an attorney must apply "appropriate knowledge, skill, thoroughness, and preparation to the client's issues." *Attorney Grievance*

21

*Comm'n v. Brooks*, 476 Md. 97, 131 (2021) (quoting *Attorney Grievance Comm'n v. Rheinstein*, 466 Md. 648, 709 (2020), *reconsideration denied* (Feb. 28, 2020), c*ert. denied sub nom. Rheinstein v. Attorney Grievance Comm'n*, ___ U.S. ___, 141 S. Ct. 370 (2020)).

An attorney demonstrates incompetence by failing to act in a timely fashion that may result in harm to the client. *Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 319 (2012). Similarly, an attorney demonstrates incompetence by failing to file necessary motions or failing to appear at a hearing. *Attorney Grievance Comm'n v. Walker-Turner*, 428 Md. 214, 226-28 (2012).

The hearing judge found that Ms. Proctor provided incompetent representation to Ms. Belfast when she failed to timely file the lawsuit against Verizon. The hearing judge found that Ms. Proctor provided incompetent representation to Ms. Colvin due to her insufficient responses to discovery and the motion for sanctions, failing to correct these responses, ignoring a court order, and failing to appear at a hearing on Ms. Colvin's behalf. And the hearing judge found that Ms. Proctor provided incompetent representation to Mr. Barrow by failing to inform him of relevant deadlines, failing to timely respond or propound discovery, and failing to timely file a motion to transfer venue. These findings are supported by clear and convincing evidence.

Although Ms. Proctor does not expressly except to the hearing judge's conclusion that she violated MARPC 1.1, she implicitly does so by excepting to all findings related to Ms. Colvin and Mr. Barrow. Ms. Proctor avers that she has evidence that could refute the allegations against her, and that she reduced her case load when she became aware that the AGC would be pursuing a disciplinary action against her. The short answer is this: if Ms.

Proctor had such evidence, then she should have produced it in discovery, and she should have timely responded to the requests for admissions. Having overruled her exceptions regarding the discovery sanctions, we likewise overrule her exceptions to the hearing judge's findings here.

## 2. *MARPC 1.2 (Scope of Representation)*.

MARPC 1.2(a) provides:

Subject to sections (c) and (d) of this Rule, an attorney shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. An attorney may take such action on behalf of the client as is impliedly authorized to carry out the representation. An attorney shall abide by a client's decision whether to settle a matter. In a criminal case, the attorney shall abide by the client's decision, after consultation with the attorney, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

A client is entitled "to make informed decisions as to the objectives of the representation[]." *Attorney Grievance Comm'n v. Shapiro*, 441 Md. 367, 380 (2015). An attorney who deprives a client of this power by failing to give sufficient updates concerning his case violates MARPC 1.2(a). *Id*. Likewise, this Rule is also violated when an attorney does not follow a client's instructions or adequately pursue a client's claim. *See Attorney Grievance Comm'n v. Moore*, 451 Md. 55, 80 (2017) (finding a violation of MARPC 1.2(a) when an attorney did not attempt to settle a client's case despite the client's instructions); *Brown*, 426 Md. at 320 (finding a violation of MARPC 1.2(a) when an attorney failed to pursue a client's claim and did not inform the client of discovery sanctions due to the attorney's idleness); *Attorney Grievance Comm'n v. Reinhardt*, 391 Md. 209, 218 (2006)

23

(ignoring a client's repeated request for updates concerning her case and failing to take the requisite action to resolve her case amounted to a violation of MARPC 1.2(a)).

The hearing judge concluded that Ms. Proctor violated MARPC 1.2 for the same reasons that she violated MARPC 1.1 and 1.4, as discussed below. Ms. Proctor repeatedly failed to pursue her clients' claims when she did not file Ms. Belfast's lawsuit and failed to file and respond to motions during her representation of Ms. Colvin and Mr. Barrow. She further failed to inform her clients of the status of their respective cases, which deprived them of the ability to make informed decisions about their matters. The hearing judge's conclusion is supported by clear and convincing evidence.

### 3. *MARPC 1.3 (Diligence)*.

MARPC 1.3 requires an attorney to "act with reasonable diligence and promptness in representing a client." This Rule can be violated when an attorney fails to communicate with the client or fails to "advance the client's cause or endeavor[.]" *Attorney Grievance Comm'n v. Bah*, 468 Md. 179, 208 (2020) (quoting *Attorney Grievance Comm'n v. Edwards*, 462 Md. 642, 699 (2019)); *see also Attorney Grievance Comm'n v. Smith-Scott*, 469 Md. 281, 340 (2020) (noting that a violation of MARPC 1.1 and/or 1.4 can constitute a violation of 1.3).

The hearing judge found that this Rule was violated when Ms. Proctor declined to serve a copy of Mr. Ireland's answer on Ms. Jacques-Ireland and ignored her requests for said copy. The hearing judge further found that Ms. Proctor violated this Rule during her representation of Ms. Belfast, Ms. Colvin, and Mr. Barrow for the same reasons she was

24

in violation of MARPC 1.1 and 1.4. The hearing judge's conclusion that Ms. Proctor violated this Rule is supported by clear and convincing evidence.

Here again, Ms. Proctor does not specifically except to the hearing judge's conclusion that she violated MARPC 1.3, but excepts generally to all findings related to Ms. Jacques-Ireland for the same reasons she excepted to all findings relating to the Colvin and Barrow matters. As with her prior objection, if Ms. Proctor had evidence that was helpful to her, then she should have produced it in discovery, and she should have timely responded to the requests for admissions. As she did not, we overrule her exception.

### 4. *MARPC 1.4 (Communication)*.

MARPC 1.4 provides:

(a) An attorney shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 19-301.0 (f) (1.0), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and
(4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.
(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

MARPC 1.4 can be violated if a client has made several "reasonable requests for information, which may include a general status update or for documents pertaining to the case[,]" to no avail. *Attorney Grievance Comm'n v. Planta*, 467 Md. 319, 349 (2020); *Attorney Grievance Comm'n v. Dailey*, 474 Md. 679, 705 (2021). A violation may also occur if an attorney makes misrepresentations to her client concerning the status of their

25

case. *Attorney Grievance Comm'n v. Fox*, 417 Md. 504, 517 (2010). In both instances, a client would be unable to make an informed decision regarding the representation. *Id*.

The hearing judge concluded that MARPC 1.4(a) was violated when Ms. Proctor failed to communicate with Ms. Belfast, Ms. Colvin, and Mr. Barrow about the status of their respective cases. Similarly, she failed to inform her clients of the adverse developments in their cases due to her errors and omissions. The hearing judge's conclusion that Ms. Proctor violated this Rule is supported by clear and convincing evidence.

### 5. *MARPC 1.5 (Fees).*

MARPC 1.5(a) provides:

An attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the attorney or attorneys performing the services; and
(8) whether the fee is fixed or contingent.

In determining whether a fee is unreasonable, this Court does not limit its analysis to the fee at the inception of the representation. *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 224 (2012). Rather, we also examine the fee at the conclusion of the representation in relation to the services provided. *See Planta*, 467 Md. at 350-51; *Attorney*

26

*Grievance Comm'n v. Patterson*, 421 Md. 708, 732 (2011) (holding that an attorney's lack of diligence and competence may cause a fee to be unreasonable at the conclusion of representation).

The hearing judge determined that this rule was violated when Ms. Proctor collected an unreasonable amount of fees from Mr. Barrow. Although no issue was found on the face of their fee agreement, those fees later became unreasonable because of the lack of competent or diligent representation that Ms. Proctor provided. Additionally, this Rule was violated when Ms. Proctor charged Mr. Barrow $1,200. for transcripts that only cost $243—a markup of nearly 500%—without any explanation or justification. The hearing judge's conclusion of law that Ms. Proctor violated MARPC 1.5(a) is supported by clear and convincing evidence.

### 6. MARPC 1.16 (Declining or Terminating Representation).

MARPC 1.16(d) provides:

> Upon termination of representation, an attorney shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of another attorney, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The attorney may retain papers relating to the client to the extent permitted by other law.

The hearing judge determined that Ms. Proctor violated MARPC 1.16(d) when she failed to provide Ms. Belfast and Ms. Colvin with a copy of their files and failed to respond to their requests for those files in any manner. Regarding Mr. Barrow, this Rule was violated when Ms. Proctor declined to return any of the unreasonable fees collected in connection with her representation. We agree and find that the hearing judge's conclusion

27

is supported by clear and convincing evidence. *See Hamilton*, 444 Md. at 191 (failing to return unreasonable fees is a violation of MARPC 1.16(d)); *Brown*, 426 Md. at 322 (holding that an attorney is required to give a client a copy of their file at the conclusion of representation when requested, and the failure to do so is a violation of MARPC 1.16(d)).

### 7. *MARPC 3.3 (Candor Toward the Tribunal)*.

MARPC 3.3(a)(1) prohibits an attorney from knowingly making or failing to correct "false statement[s] of fact or law to a tribunal . . . ." An attorney also must always be truthful to the inquiry board. *Attorney Grievance Comm'n v. Butler*, 456 Md. 227, 238 (2017).

The hearing judge concluded that Ms. Proctor violated this Rule in connection with her representation of Ms. Colvin on November 27, 2018, when she falsely stated that she mailed Ms. Colvin's discovery responses to opposing counsel on April 20, 2018, and that she was never made aware that the responses were not received. This conclusion is supported by clear and convincing evidence.

### 8. *MARPC 5.5 (Unauthorized Practice of Law; Multi-Jurisdictional Practice of Law)*.

MARPC 5.5 provides, in part:

(a) An attorney shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.
(b) An attorney who is not admitted to practice in this jurisdiction shall not:
(1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or
(2) hold out to the public or otherwise represent that the attorney is admitted to practice law in this jurisdiction.

28

An attorney who engages in the practice of law while decertified or suspended from the Maryland Bar is in violation of MARPC 5.5. *Attorney Grievance Comm'n v. Agiliga*, 422 Md. 613, 624 (2011). There is no bright line test we employ to establish if an individual engaged in the unauthorized practice of law. Rather, when determining whether an attorney violated MARPC 5.5(a), we focus our analysis "on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent." *Attorney Grievance Comm'n v. Tanko*, 427 Md. 15, 45 (2012) (quoting *Attorney Grievance Comm'n v. Hallmon*, 343 Md. 390, 397 (1996)) (citation omitted). Examples of activities that we have held to constitute the practice of law are preparing or interpreting legal documents, "the giving of legal advice, or the application of legal principles to problems of any complexity[.]" *Attorney Grievance Comm'n v. Lang*, 461 Md. 1, 33 (2018) (quoting *Hallmon*, 343 Md. at 397).

In determining whether MARPC 5.5(b) has been violated, we also consider whether the attorney maintained a "continuous presence in this jurisdiction for the practice of law." *Attorney Grievance Comm'n v. Thompson*, 462 Md. 112, 128 (2018) (citing Md. Rule MARPC 5.5(b)(1)), *reinstatement granted sub nom. Matter of Thompson*, 463 Md. 614 (2019). This presence could be in the form of holding oneself out as an attorney or maintaining an office for the practice of law. *Attorney Grievance Comm'n v. Jackson*, 477 Md. 174. 198-200 (2022). Moreover, an attorney's failure to inform her client that she is suspended or decertified from the practice of law also violates this Rule. *See Attorney Grievance Comm'n v. Maignan*, 423 Md. 191, 203 (2011).

29

The hearing judge found that Ms. Proctor violated this Rule on two occasions. The first was during the time periods when she was temporarily suspended from the practice of law due to her failure to pay her annual assessment to the Client Protection Fund. The second was when she was temporarily decertified from the practice of law due to her failure to submit pro bono reporting forms.

Ms. Proctor excepts to this finding. She claims that she should not have been forced to defend herself against allegations that occurred seven to 18 years prior to the filing of the Petition. She additionally contends that when the Petition was filed, she had no records or recollection relevant to her payment of the annual dues. Finally, she avers that the hearing judge's conclusion is unsupported since there were no specific examples given of when she practiced law during the periods when she was temporarily suspended or decertified.[8]

We overrule Ms. Proctor's exception. One period when Ms. Proctor was suspended from the practice of law was between March 15 and April 5, 2012. On March 21, however, Ms. Proctor improperly provided legal advice to Ms. Belfast when she stated that there was no case pending against Verizon and that she was unsure of whether she failed to file the lawsuit or whether it was improperly docketed. Thus, the hearing judge's conclusion of law that Ms. Proctor violated MARPC 5.5(a) is supported by clear and convincing evidence.

---

[8] Since we have already disposed of Ms. Proctor's argument regarding the unauthorized practice of law allegations not being barred by the statute of limitations, we will only focus on the portion of Ms. Proctor's argument relating to the hearing judge's lack of evidence to support this finding.

In addition, Ms. Proctor did not inform Ms. Belfast of her temporary suspension or her decertification from the practice of law. Rather, she continued in her representation of Ms. Belfast. Therefore, we find that the hearing judge's finding that Ms. Proctor violated MARPC 5.5(b) is supported by clear and convincing evidence.

### 9. *MARPC 8.1 (Bar Admission and Disciplinary Matters).*

MARPC 8.1, in part, provides:

An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6.

The hearing judge concluded Ms. Proctor violated MARPC 8.1(a) when on November 5, 2018, she told Bar Counsel that in 2008, she had informed Ms. Belfast that she failed to file a lawsuit against Verizon and took responsibility for her failure. Additionally, she violated this Rule when she stated that between 2008 and 2012, she had extensive negotiations with Ms. Belfast regarding the unrealistic value of her case. These statements were knowingly false, in violation of MARPC 8.1(a). *See Thompson*, 462 Md. at 129 (making knowingly false statements to the AGC in an effort to paint oneself in a better light was a violation of MARPC 8.1(a)); *see also Attorney Grievance Comm'n v. O'Leary*, 433 Md. 2, 26 (2013) (misleading the AGC during their investigation was a violation of MARPC 8.1(a)).

31

The hearing judge concluded that Ms. Proctor violated MARPC 8.1(b) between March 2019 and July 2019 when she failed to respond to Bar Counsel's many attempts to contact her regarding the complaints that were filed against her.

The hearing judge's conclusion of law that Ms. Proctor violated MARPC 8.1 is supported by clear and convincing evidence. *See Attorney Grievance Comm'n v. Harmon*, 433 Md. 612, 626-27 (2013) (finding a violation of MARPC 8.1(b) when an attorney repeatedly failed to respond to the AGC's investigative inquiries).

### 10. MARPC 8.4 (Misconduct).

MARPC 8.4, in relevant part, states:

It is professional misconduct for an attorney to:
(a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\*\*\*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]
(d) engage in conduct that is prejudicial to the administration of justice[.]

The hearing judge found that Ms. Proctor violated MARPC 8.4(a) due to her other rule violations. Because Ms. Proctor violated several MARPC Rules, we find that this conclusion of law is supported by clear and convincing evidence. *See Attorney Grievance Comm'n v. Sanderson*, 465 Md. 1, 64 (2019) (noting how committing violations of other MARPC also violates MARPC 8.4(a)).

The hearing judge found that Ms. Proctor violated MARPC 8.4(c) during her representation of Ms. Belfast, Ms. Colvin, and Mr. Barrow. Regarding Ms. Belfast and

Mr. Barrow, Ms. Proctor made several misrepresentations to conceal her wrongdoing and attempted to dissuade Ms. Belfast from filing a complaint with the AGC. She further violated this Rule in connection with Ms. Colvin for the same reasons that she violated MARPC 3.3, falsely stating that she mailed Ms. Colvin's discovery responses to opposing counsel on April 20, 2018 and that she was never made aware that the responses were not received.

We affirm the hearing judge's finding as to this violation. *See Attorney Grievance Comm'n v. Mixter*, 441 Md. 416, 523-24 (2015) (holding that an attorney's "dishonest and misrepresentative actions" violated MARPC 8.4(c)); *Rheinstein*, 466 Md. at 716-17 (explaining how an attorney who commits a violation of MARPC 3.3(a) usually also violates MARPC 8.4(c) due to the commonalities between those rules).

When an attorney's actions "bring the legal profession into disrepute[,]" she has committed a violation of MARPC 8.4(d). *Attorney Grievance Comm'n v. Plank*, 453 Md. 446, 465 (2017) (citation omitted). This includes "acts of dishonesty and incompetence, [and even] intentional representations to Bar Counsel[.]" *Dailey*, 474 Md. at 710. In all four matters and during the AGC's investigation, Ms. Proctor repeatedly engaged in egregious conduct that would adversely affect the public's opinion of the legal profession. *Rheinstein*, 466 Md. at 719 (recurring misconduct constitutes a violation of MARPC 8.4(d)). Therefore, we find the hearing judge's conclusion of law that Ms. Proctor violated MARPC 8.4 is supported by clear and convincing evidence.

**SANCTION**

33

This Court has determined the appropriate sanction for Ms. Proctor's conduct. Bar Counsel urged that we disbar Ms. Proctor; Ms. Proctor contended that a definite one-year suspension would be more appropriate. We agreed with Bar Counsel.

We sanction attorney misconduct with the purpose of safeguarding the public from those unfit to practice law, not to punish the attorney. *Attorney Grievance Comm'n v. Karambelas*, 473 Md. 134, 176-77 (2021). We will assess the individual circumstances, inclusive of any mitigating or aggravating factors, of each case in order to determine a sanction commensurate to the violations committed. *Id.* at 177.

## A. *Mitigating Factors*.

We recognize the following mitigating factors in considering the appropriate sanction:

> (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to [Bar Counsel] or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

34

*Attorney Grievance Comm'n v. Allenbaugh*, 450 Md. 250, 277-78 (2016) (citing *Attorney Grievance Comm'n v. Shuler*, 443 Md. 494, 506-07 (2015)).  Ms. Proctor did not offer any mitigating factors and none were found.

**B.      Aggravating Factors.**

The Court also considers the following aggravating factors:

(1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the [MARPC]; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Attorney Grievance Comm'n v. Sperling*, 459 Md. 194, 275 (2018).  The hearing judge found that Bar Counsel proved eight aggravating factors by clear and convincing evidence. We agree.

*First*, the hearing judge found that Ms. Proctor had a dishonest or selfish motive. Ms. Proctor made several misrepresentations to conceal the true status of Ms. Belfast's case and made false statements surrounding their settlement agreement to deter Ms. Belfast from filing a complaint with the AGC.  Ms. Proctor also had a dishonest and selfish motive in connection with her representation of Ms. Colvin by falsely stating that Ms. Colvin's discovery responses were mailed to opposing counsel and that she was unaware they were never received.   She had a dishonest and selfish motive in connection with her representation of Mr. Barrow when she knowingly misrepresented the outcome of the

35

hearing and failed to advise him that he had 10 days to supplement his discovery responses. She also displayed a dishonest or selfish motive when she overcharged Mr. Barrow for the transcripts.

*Second*, the hearing judge found that Ms. Proctor exhibited a pattern of misconduct, evidenced by her repeated failings to file pleadings, motions, and discovery, and to inform her clients of these shortcomings.

*Third*, as evidenced by our above analysis on MARPC violations, Ms. Proctor committed numerous violations while representing her clients and during Bar Counsel's investigation.

*Fourth*, Ms. Proctor engaged in bad faith obstruction of the disciplinary process by intentionally making false statements to Bar Counsel and refusing to comply with the lawful requests for information regarding the complaints filed against her.

*Fifth*, during her disciplinary hearing, Ms. Proctor made knowingly false statements and submitted false evidence. Ms. Proctor falsely stated that she never received Bar Counsel's discovery requests, falsely stated that she was never served by the process server and that the affidavit submitted by the process server was untrue, and falsely claimed that she mailed discovery responses to Bar Counsel.

*Sixth*, Ms. Proctor has not acknowledged the wrongful nature of her conduct. She still avers that she was never served with the requests for admissions and that the hearing judge "erroneously" ordered discovery sanctions. Ms. Proctor also does not appear to accept responsibility for the allegations from Ms. Colvin, Ms. Jacques-Ireland, and Mr. Barrow. For each of those matters, she claims that she has evidence pertaining "both to

36

the truthfulness of the allegations and to mitigating factors." Ms. Proctor has clearly not fully appreciated the extent of her misconduct.

*Seventh*, Ms. Proctor has been admitted to the Maryland Bar for approximately 22 years, which is a substantial amount of experience. Thus, she was or should have been aware of her professional obligations and the seriousness of her actions.

*Last*, Ms. Proctor has repeatedly failed to make payments to Ms. Belfast pursuant to their settlement agreement. She similarly failed to reimburse Ms. Colvin and Mr. Barrow for the sanctions they were assessed because of her failings in their cases or to refund Mr. Barrow for any part of the unreasonable fee she collected. These actions evidence Ms. Proctor's unwillingness to make her clients whole for the damage she has caused.

## C.    *Analysis*.

Ms. Proctor's transgressions involve intentional dishonesty and the unauthorized practice of law. In *Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 418 (2001), this Court found that disbarment is often the appropriate sanction when the attorney's wrongful actions involve dishonesty. We cautioned that

> [o]nly if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of stealing, dishonesty, fraudulent conduct, the intentional misappropriation of funds or other serious criminal conduct, whether occurring in the practice of law, or otherwise.

*Id*. at 414. On the other hand, when there has been no misappropriation of money, intentional dishonesty has not always resulted in disbarment. *See, e.g.*, *Attorney Grievance Comm'n v. Keating*, 471 Md. 614, 656 (2020); *Attorney Grievance Comm'n v. Lane*, 367

37

Md. 633, 646-47 (2002) ("We have not, however, always found disbarment to be the appropriate sanction where there is misrepresentation involved, especially where misappropriation of money was not involved."). It all depends, of course, on the specific facts and circumstances of each case. *Attorney Grievance Comm'n v. Bonner*, 477 Md. 576, 622 (2022) (citing *Attorney Grievance Comm'n v. Palmer*, 417 Md. 185, 211 (2010)).

In our recent decision in *Attorney Grievance Commission v. Collins*, 477 Md. 482, 529-530 (2022), we reexamined when intentional dishonest conduct would warrant disbarment under the standard set forth in *Vanderlinde*, 364 Md. at 367.[9] There, we analyzed AGC cases post-*Vanderlinde* and observed that disbarment has generally been warranted in cases where intentional dishonest conduct has also been accompanied by "theft, fraud, harm to a client or third party, or the intentional misappropriation of funds." *Id*. at 530.

---

[9] Under *Vanderlinde*, intentional dishonest conduct, absent compelling circumstances, justified disbarment. 364 Md. at 418-19. We created a standard that provided:

> in cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as "compelling extenuating circumstances," anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the "root cause" of the misconduct and that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the M[A]RPC. Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of stealing, dishonesty, fraudulent conduct, the intentional misappropriation of funds or other serious criminal conduct, whether occurring in the practice of law, or otherwise.

*Vanderlinde*, 364 Md. at 413-14.

38

With this in mind, we turn to the specific facts and circumstances of Ms. Proctor's case. As previously stated, she engaged in conduct involving intentional dishonesty, including lying to her clients, Bar Counsel, and the tribunal. Due to this behavior alone, disbarment is generally warranted. *See Hamilton*, 444 Md. at 200; *Lane*, 367 Md. at 647; *Vanderlinde*, 364 Md. at 418.

Ms. Proctor's misconduct directly harmed her clients. Her clients lost claims and defenses due to her serial neglect, paid unreasonable fees, and were deprived of important information necessary to make informed decisions about their cases. Our review of prior attorney misconduct cases informs us that Ms. Proctor's actions align with the cases in which we have imposed the sanction of disbarment. *See, e.g.*, *Attorney Grievance Comm'n v. McCarthy*, 473 Md. 462, 507 (2021) (disbarring an attorney who engaged in self-serving, dishonest behavior that resulted in harm to his client); *Attorney Grievance Comm'n v. Armstrong*, 471 Md. 537, 608-09, 612 (2020) (disbarring an attorney who got his client's case dismissed with prejudice due to the attorney's failure to respond to discovery, and causing a different client to be deported by missing a filing deadline for asylum); *Attorney Grievance Comm'n v. Miller*, 467 Md. 176, 237-38 (2020) (disbarring an attorney who made misrepresentations that resulted in harm to her client); *Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 180 (2010) (disbarring an attorney who harmed his client by concealing that he missed the statute of limitations to file a client's case).

Ms. Proctor further failed to demonstrate any "compelling extenuating circumstances" to justify a sanction less than disbarment. *Collins*, 477 Md. at 530; *Vanderlinde*, 364 Md. at 413-14. Her allegations that she was having emotional difficulties

as a result of the complaint filed by Ms. Belfast and that the filing affected her representation in her other client matters did not satisfy the standard. Ms. Proctor neither produced any evidence at trial to support this assertion nor did she offer any mitigating factors. *See Bonner*, 477 Md. at 617. Accordingly, we determine that disbarment is the appropriate sanction.

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/1a20agcn.pdf